COMMONWEALTH vs. PETER BONGARZONE
(and five companion cases[1]).

Norfolk. May 2, 1983. — October 13, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Controlled Substance. Due Process of Law,* Vagueness of statute. *Statute,* Construction. *Practice, Criminal,* Sentence, Motion to dismiss, Indictment, Grand jury proceeding, Severance, Instructions to jury. *Evidence,* Common criminal enterprise. *Search and Seizure,* Automobile. *Constitutional Law,* Search and seizure.

The second clause of G. L. c. 94C, § 32E (*a*), appearing in St. 1980, c. 436, § 4, which prescribes a "mandatory term" of three years' imprisonment for persons convicted of possessing marihuana in quantities of between 100 and 2,000 pounds, with intent to distribute it, is unconstitutionally vague by reason of its inconsistency with introductory language of § 32E (*a*) providing for imprisonment for no less than one nor more than ten years, or by a fine, if the quantity of marihuana in question is at least fifty pounds. [333-336]

Where penalty provisions of G. L. c. 94C, § 32E (*a*) (2), as appearing in St. 1980, c. 436, § 4, were held to be unconstitutionally vague, defendants convicted on indictments charging possession of marihuana in excess of 100 pounds with intent to distribute it were to be resentenced under G. L. c. 94C, § 32C (*a*), which punishes the lesser included offense of possession of marihuana with intent to distribute it. [336-337]

No abuse of discretion appeared in a judge's denial of motions to dismiss indictments because of admittedly false testimony of a police officer before the grand jury, since the motions were untimely and were unaccompanied by the affidavits required by Mass. R. Crim. P. 13 (*a*) (2) [337-338]; nor was there merit to the defendants' claim, inasmuch as they failed to show either that the false testimony was calculated to procure the indictments or that it had that effect [338-339].

A judge's denial of a motion to sever the trial of a criminal defendant from that of three codefendants did not violate that defendant's con-

---

[1] Of the companion cases one is against Peter Bongarzone, two are against Joseph Carfagna, one is against Gordon P. Trapp, and one is against Paul F. Smith.

frontational rights under the Sixth Amendment to the United States Constitution by reason of the later admission in evidence of incriminating statements by a codefendant who did not testify, where ample evidence, apart from such statements, permitted the jury to find that the defendant and codefendant were engaged in a joint criminal enterprise at the time the statements were made and where, in the circumstances, any error in the admission of other statements made by the codefendant after termination of the joint criminal enterprise was harmless. [339-342]

At the trial of four defendants charged with trafficking in marihuana, it was error, requiring reversal of the convictions of two of them, for the judge to admit in evidence certain statements to a police officer made by a codefendant who did not testify, where the statements constituted an offer and agreement to enter a new joint venture which conflicted with the common objective of any joint venture which might have existed among the defendants, and where, in the circumstances, the statements were significantly prejudicial. [342-346]

There was no merit to the contention that a judge at a criminal trial, in instructing the jury on joint venture, failed to indicate that the Commonwealth had to prove that each defendant actively participated in the joint venture. [346]

The judge at the joint criminal trial of four defendants properly instructed the jury that evidence admitted against one of the defendants under the joint venture exception to the hearsay rule could be considered against that defendant only if they found the existence of a joint venture. [346-347]

In light of a criminal defendant's own damaging pretrial statements, which were in evidence at his trial with three codefendants on charges of trafficking in marihuana, and in light of other evidence properly before the jury, any error in the judge's instructing the jury respecting a joint criminal enterprise among the defendant and two of the codefendants, where the evidence would not have warranted their finding that such an enterprise existed, was harmless beyond a reasonable doubt. [347]

At the trial of indictments charging unlawful possession of marihuana with intent to distribute it, there was no error in the judge's instructions to the jury concerning the elements of possession. [347-348]

At the trial of defendants charged with trafficking in marihuana, the judge properly denied the defendants' motions for required findings of not guilty as to so much of the indictments which charged possession of marihuana with intent to distribute it. [348-350]

Police officers' warrantless search of a van, which resulted in their seizure of a large quantity of marihuana in plastic trash bags, was justified both on the basis that the police did not have sufficient opportunity to obtain a search warrant and on the basis that the search was incident to a lawful arrest. [350-352]

INDICTMENTS found and returned in the Superior Court Department on March 17, 1981.

A pretrial motion to suppress evidence was heard by *Irwin*, J., and the cases were tried before *Roger J. Donahue*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*J. Russell Hodgdon* for Paul F. Smith.

*Anthony M. Traini* for Gordon P. Trapp.

*James F. Horan* for Joseph Carfagna.

*Alfred Paul Farese* for Peter Bongarzone.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. Peter Bongarzone, Joseph Carfagna, Gordon P. Trapp, and Paul F. Smith were convicted by a jury of violating the marihuana trafficking statute, G. L. c. 94C, § 32E (a)(2), as appearing in St. 1980, c. 436, § 4. They received sentences of from five to seven years at the Massachusetts Correctional Institution at Walpole (M.C.I., Walpole), with the exception of the defendant Trapp, who received a sentence of from six to eight years. The defendants Bongarzone and Carfagna were also convicted of violating G. L. c. 268A, § 2 (a) (bribery), and received concurrent sentences of from two to three years. The defendants appealed, and we transferred the appeal here on our own motion.

The defendants raise the following issues: (1) whether the indictments should have been dismissed because of the false testimony of a police officer before the grand jury; (2) whether the trial judge should have granted motions of Carfagna, Trapp, and Smith to sever; (3) whether either the substantive or penalty provisions of G. L. c. 94C, § 32E (a) (2), are invalid; (4) whether the trial judge should have granted Bongarzone's and Trapp's motions for required findings of not guilty; (5) whether the trial judge failed to instruct the jury correctly; and (6) whether Trapp's motion to suppress should have been granted. We shall review the facts and consider those issues necessary for the disposition of these appeals.

According to the Commonwealth's main witness, Weymouth police Officer Robert Dalrymple, this tangled tale of trickery began with a telephone call to Officer Dalrymple at his home at 8:15 P.M., on the evening of January 21, 1981. The call was from Bongarzone, a person known to Dalrymple. Bongarzone requested Dalrymple don his uniform and proceed to the Bongarzone residence located in Weymouth. Without the benefit of any further explanation, Officer Dalrymple did so. Dalrymple knew Bongarzone because he had engaged Bongarzone for several years to deliver heating oil to his home and was a close friend of Bongarzone's brother.

Bongarzone met Dalrymple at the front door. The two men then walked through the living room to the kitchen, past three white males unknown to the officer. Bongarzone inquired whether Officer Dalrymple "would like to earn $10,000." He explained that "an acquaintance of his had ripped off over $100,000 worth of marijuana from two dealers in Hull." With those words, Bongarzone made a gesture toward the living room, and Carfagna joined the pair in the kitchen. Bongarzone then elaborated on the circumstances. He told Officer Dalrymple that Carfagna had stolen the marihuana, that Carfagna had been threatened with "bodily harm" if he did not return it, and that "this marijuana had originally come up from Florida and that the two dealers in Hull had ripped it off from two dealers in Rhode Island."

Bongarzone also laid out a scheme for regaining possession of the marihuana. Officer Dalrymple was to obtain a marked police cruiser and follow Carfagna, who would be driving a Ford Bronco vehicle containing the marihuana, to a nearby tavern called the Commercial House. The two dealers from Hull would take possession of the Bronco and drive off. Officer Dalrymple would follow them, stop them for a supposed traffic infraction, and "chew their ass out, let them go, confiscate the marijuana and return it to Peter's [Bongarzone's] house." With the plan laid out, the three went outside to the backyard to examine the marihuana

and the Ford Bronco.[2] Carfagna opened the door to the vehicle and an interior dome light went on. Officer Dalrymple testified at the trial that he "observed over ten Hefty green trash bags in the back of the Bronco. I smelled marijuana, and I was told that was the marijuana." The three men returned to the kitchen where there was some mention of a shotgun and two men with an automobile with a Rhode Island license plate. Dalrymple told Bongarzone and Carfagna that he would try to make the necessary arrangements, and he departed.

At the Weymouth police station, Officer Dalrymple conferred with Lieutenant Rodney Rumble and Detectives Robert Burke and Warren Paul Burke, and informed them of the situation. A scheme to capture the marihuana and the two Hull dealers was devised. Dalrymple obtained a cruiser, returned to the Bongarzone residence, and met briefly with Bongarzone and Carfagna. Officer Dalrymple then got back into the cruiser and waited for the Ford Bronco to be driven to the Commercial House.

Carfagna drove the Bronco out of Bongarzone's driveway, and Dalrymple followed it to the Commercial House. Carfagna parked the Bronco, alighted, and entered the tavern. Within fifteen seconds, Carfagna came back out in the company of two males and a female. The two males looked in the back window of the Bronco and then entered the vehicle. The Bronco soon passed directly in front of the cruiser, and Officer Dalrymple observed that it contained the green trash bags.

Officer Dalrymple followed the Bronco for about one mile. When it stopped for a red traffic light, he pulled the cruiser directly in front of it, alighted, and drew his revolver. Other police officers arrived on the scene and approached the Bronco with drawn revolvers. Officer Dalrymple spoke with the defendant Trapp, who was driving. Dalrymple also spoke with the passenger, the defendant

---

[2] The Bronco later would be determined to be registered to the defendant Smith.

Smith. Smith admitted that the vehicle belonged to him. The police found fifteen green trash bags filled with a substance later determined to be marihuana, each weighing over twenty pounds, in the rear of the Bronco. There was testimony that the odor of marihuana was emanating from the bags.

The police took Smith and Trapp, who both resided in Hull, in custody, advised them of their Miranda rights, and questioned them concerning the incident. Smith told the police that a person named "Joker"[3] had driven him to the Commercial House in the Bronco. That person took the Bronco and left. After the Bronco was returned, Smith and Trapp started to drive back to Smith's home in Hull. Smith denied any knowledge of the presence of marihuana in the Bronco when the police stopped them. Trapp told the police that he had received a call that night requesting that he come to the Commercial House and drive an intoxicated Smith home. He stated that he secured a ride to the Commercial House and, at the time of his arrest, was driving Smith home. He also denied knowing where the marihuana came from. At trial, the Commonwealth introduced evidence demonstrating that Trapp did not possess a driver's license.

Neither Bongarzone nor Carfagna was arrested that night, and complaints against them were not issued until January 30, 1981. On January 24, Bongarzone telephoned Officer Dalrymple and arranged a meeting. Dalrymple testified, "Peter said to me he was sorry he got me involved. He was sorry he got himself involved. The only thing he saw was money flashing before his eyes." On February 1, 1981, Dalrymple spoke again with Bongarzone, who had by then been indicted. Officer Dalrymple told Bongarzone that he needed a good lawyer and recommended a lawyer who had represented Dalrymple successfully in the past. There was also testimony indicating that Officer Dalrymple had

---

[3] There was testimony indicating that "Joker" was Carfagna's nickname.

spoken with Carfagna and Bongarzone at a local tavern in July.[4]

During the trial, the attorneys for the defendants sought to impeach the credibility of Officer Dalrymple. They conducted exhaustive cross-examinations designed to bring out that Dalrymple had admitted at the suppression hearing that he had not testified truthfully concerning certain facts during his prior testimony at a probable cause hearing. These facts related to whether Officer Dalrymple had observed the marihuana while the Bronco was parked in the backyard of Bongarzone's house on January 21, 1981.[5] Also, at all times prior to the trial, Officer Dalrymple had testified that only Carfagna accompanied him out of the house to observe the marihuana through puncture holes in the trash bags. At trial, Dalrymple testified that both Bongarzone and Carfagna had accompanied him and that now he had some doubt as to whether he had seen the marihuana in the Bronco in Bongarzone's backyard, and wished to give Bongarzone the benefit of the doubt. He testified that he originally did not place Bongarzone in the backyard simply as a means of aiding Bongarzone's defense. There was testimony that Officer Dalrymple felt that Bongarzone and Carfagna should not have been prosecuted.

Two of the defendants, Carfagna and Smith, testified at trial. Their testimony was essentially consistent and was in accord with the statements Smith and Trapp made to the police after their arrest. This testimony indicated that the "true owner" of the marihuana was one Bernard Small, and that Officer Dalrymple was the one who had stolen it. Based on information provided by Smith, Small had accused Carfagna of stealing it. Later, according to Carfagna's testimony, Small learned the identity of the true thief,

---

[4] There was also testimony that Bongarzone and Officer Dalrymple had discussed at various times certain parts of Dalrymple's testimony after Bongarzone's arrest.

[5] There was also a discrepancy in Officer Dalrymple's testimony at various times concerning whether he saw a shotgun at Bongarzone's house. At trial, Dalrymple testified that he had not seen one there.

and Carfagna offered to ask Bongarzone to arrange a meeting between Small and Officer Dalrymple. Small accepted, saying that he would "take care" of them. Bongarzone agreed, made the necessary arrangements, and the parties met at Bongarzone's house.

Smith claimed he entered the picture as an unknowing participant. He testified that he had loaned his Bronco to Small because Small wanted to confer with Carfagna concerning the stolen marihuana. Small left him at a local tavern and Smith stayed there until Carfagna later gave him a ride to the Commercial House. Carfagna told Smith that he would retrieve the Bronco; he left and proceeded to Bongarzone's house.

Carfagna testified that Small arrived at Bongarzone's house with Smith's Bronco and that Officer Dalrymple had brought the marihuana with him. A heated discussion ensued, and Carfagna testified that he left, since he had "done what I was supposed to do." As he was driving off in his own truck, he testified that he saw the remaining parties walking out of the house.

From this testimony and Trapp's prior statements, the jury were to infer that Small and Officer Dalrymple reached an agreement, and transferred the marihuana to the Bronco, and that Small drove the Bronco to the Commercial House. Trapp arrived there to drive an intoxicated Smith home. He obtained the keys to the Bronco and drove off with Smith, both unaware of the marihuana in the rear of the vehicle.

1. *Challenges to the validity of G. L. c. 94C, § 32E (a).* We first consider various challenges to G. L. c. 94C, § 32E (a) (2), as it existed at the time of the alleged offense.[6] Sec-

---

[6] General Laws c. 94C, § 32E (a), as appearing in St. 1980, c. 436, § 4, provides, in part: "Any person who knowingly or intentionally manufactures, distributes, dispenses, or cultivates, or possesses with intent to manufacture, distribute, dispense, or cultivate, or brings into this state in excess of fifty pounds of marihuana or any mixture containing marihuana, shall be guilty of trafficking in marihuana and shall be punished by imprisonment for not less than one and not more than ten years or by a

tion 32E (*a*) provided, inter alia, that any person who knowingly or intentionally possesses with intent to distribute at least fifty pounds of marihuana, or a mixture containing marihuana, "shall be guilty of trafficking in marihuana and shall be punished by imprisonment for not less than one and not more than ten years or by a fine of not less than $2,500." Clause 2 of the subsection provided, however, that if the quantity of marihuana involved is between 100 and 2,000 pounds, the guilty "person shall be imprisoned for a mandatory term of three years in the State prison. A fine of not less than $2,500 and not more than $25,000 may also be imposed, but not in lieu of a mandatory term of imprisonment." The defendant Smith argues that the statute is unconstitutional under *Commonwealth* v. *Gagnon*, 387 Mass. 567 (1982) (*Gagnon I*), and, with the defendant Trapp, that the mandatory sentencing provisions of clause 2 are invalid under *Commonwealth* v. *Marrone*, 387 Mass. 702 (1982).[7]

In *Gagnon* (I), *supra*, we considered the constitutionality of G. L. c. 94C, § 32 (*a*), as appearing in St. 1980, c. 436,

---

fine of not less than $2,500. If the quantity of marihuana involved is: . . . (2) 100 pounds or more, but less than 2,000 pounds, such person shall be imprisoned for a mandatory term of three years in the state prison. A fine of not less than $2,500 and not more than $25,000 may also be imposed, but not in lieu of a mandatory term of imprisonment . . . ." The amendment of the statute by St. 1982, c. 650, § 11, is not applicable to this case.

[7] While the defendants raise various challenges to the statute's validity, they did not raise at trial the precise issues presented by *Gagnon I*, 387 Mass. 567 (1982), and *Commonwealth* v. *Marrone*, 387 Mass. 702 (1982). The trial, however, occurred before our decisions in those cases. In *Commonwealth* v. *Beverly*, 389 Mass. 866 (1983), we faced the identical question, and we applied the rule of *Marrone* even though it had not been raised below or fully argued in the briefs. The circumstances of this case also require that we consider the claims arising under *Gagnon* (I) and *Marrone* even though they were not raised below. Cf. *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357-360 (1979); *Commonwealth* v. *Stokes*, 374 Mass. 583, 588-590 (1978). Further, since these issues have been argued here by Smith, substantial justice mandates that we treat these claims as before us in regard to all four defendants. *Commonwealth* v. *Moran*, 387 Mass. 644, 661 (1982). Cf. Mass. R. A. P. 16 (j), 365 Mass. 860 (1974).

§ 4, which provided, inter alia, that a person guilty of pos-
session with intent to distribute certain controlled substanc-
es "shall be punished by a term of imprisonment in the state
prison for not less than one year and not more than ten
years, or by a fine of not less than $1,000 and not more than
$10,000, or both. Any person convicted of violating this
subdivision shall be punished by a mandatory minimum one
year term of imprisonment." We found the statute to be
unconstitutional, holding that due process requires that the
penalty provision of a criminal statute must be drawn with
sufficient definitiveness to foreclose speculation as to its
meaning. *Id.* at 574.

General Laws c. 94C, § 32E (*a*), suffers from similar
defects. Clause 2 of the section, which requires a manda-
tory term of imprisonment, is plainly inconsistent with the
optional language of the main paragraph, which permits
punishment by imprisonment or fine. A second ambiguity
is the meaning of the phrase "mandatory term." In *Com-
monwealth* v. *Marrone, supra* at 704, we said, concerning
identical language in a companion statute, that "it would be
sheer conjecture on our part to conclude that the Legisla-
ture meant the [mandatory] term to be either the maximum
term or the minimum term." Hence, putting aside the
question of a fine, several alternative schemes may have
been intended. At the very least, the Legislature could have
intended that a defendant convicted of possessing 300
pounds of marihuana with the intent to distribute receive
(1) a sentence of from three to ten years with three years
constituting a mandatory minimum sentence; (2) a manda-
tory maximum sentence of three years; and (3) a sentence of
from one to ten years in the discretion of the judge. We are
simply unable to say what the Legislature intended.[8]

---

[8] We perceive nothing in the legislative history or any related provisions
of the General Laws that resolves the inherent ambiguity of the statute's
language. See *Commonwealth* v. *Marrone, supra* at 704. The Common-
wealth argues that the applicability of G. L. c. 94C, § 32H, distinguishes
this case from *Gagnon* (I) because it eliminates any conflict between the
penalty provisions of G. L. c. 94C, § 32E (*a*)(2), and G. L. c. 279, §§ 1
and 1A. The short answer to this claim is that the result in *Gagnon* (I) did
not turn on any conflict between those two statutes.

Further, we lack the ability to resolve our doubts as to what the Legislature intended by invalidating one of the two paragraphs in order to apply the other one. "That they would have provided for some penalty does not tell us what that penalty would have been. *United States* v. *Evans,* 333 U.S. 483, 495 (1948) (clear intent to punish proscribed conduct does not authorize court to fix a penalty where the statute is too uncertain)" (footnote omitted). *Commonwealth* v. *Gagnon,* 387 Mass. 768, 772 (1982) (*Gagnon II*), cert denied, 461 U.S. 921 and 464 U.S. 815 (1983). In certain respects, the provisions may be read as either enhancing or reducing punishment when compared with each other. On the one hand, the main paragraph contains optional language as to whether a defendant must be sentenced at all, and permits a sentence for as short a period as one year. On the other hand, it permits a judge to sentence a defendant to a term of ten years. In contrast, clause 2 contemplates that a mandatory sentence will be imposed. In this respect, it enhances the penalty. But, as we noted in *Commonwealth* v. *Marrone, supra,* the Legislature may have intended to create a mandatory maximum term of three years. In this respect, it may be seen as lessening the punishment in cases where, as the present one, the judge was inclined to impose a sentence for a term longer than three years. To permit these defendants to be resentenced under the main paragraph would require us to resolve a fundamental ambiguity in the statute against these defendants and to engage in judicial lawmaking. That course is not open to us. *Commonwealth* v. *Marrone, supra* at 704-706. *Gagnon II, supra. Aldoupolis* v. *Commonwealth,* 386 Mass. 260, 267, cert. denied sub nom. *Savoy* v. *Massachusetts,* 459 U.S. 864 (1982). Consequently, the statute is void for vagueness.

This holding, however, does not dispose of the indictments entirely. The indictments under G. L. c. 94C, § 32E (*a*) (2), charged that the defendants "did knowingly or intentionally possess with intent to distribute marijuana or a mixture thereof in excess of 100 pounds." The jury's ver-

dicts necessarily found, as a lesser included offense, that the defendants did knowingly .or intentionally possess marihuana with intent to distribute the same. That offense was punishable under G. L. c. 94C, § 32C (*a*), as appearing in St. 1980, c. 436, § 4. That section suffers from none of the infirmities which afflict its companion sections. Thus, if the judgments are otherwise valid, the defendants may be resentenced under § 32C (*a*). See *Gagnon* (II), *supra.*

We therefore proceed to consider whether these judgments, as well as the judgments against Bongarzone and Carfagna under G. L. c. 268A, are otherwise free from error.

2. *Grand jury testimony of Dalrymple.* The defendants argue that the trial judge should have dismissed the indictments because of the admittedly false testimony of Officer Dalrymple before the grand jury. The defendant Bongarzone raised this argument by filing a motion to dismiss, which was joined in by the other defendants, on the day the trial commenced. The judge denied the motions because they were untimely, unsupported by affidavits, and without merit.

There was no error. Rule 13 (a) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 871 (1979), requires that "an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached" to a pretrial motion. No sufficient excuse was offered either here or below concerning the absence of an affidavit. Consequently, the motion did not satisfy the requirements of the rule, and the judge was not obligated to consider it. *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 507 (1983). See *Commonwealth* v. *McColl,* 375 Mass. 316, 322 (1978).

Rule 13 (d) (2) (A) of the Massachusetts Rules of Criminal Procedure, *id.* at 873, also requires that those "pretrial motions the subject matter of which could not be agreed upon at the pretrial conference" "shall be filed within seven days after the date set for the filing of the pretrial conference report pursuant to rule 11 (a) (2) or at such other time as the

judge or special magistrate may allow." *Id.* at 873-874. Some justification can be found for the untimeliness of the motion. The discrepancies in Officer Dalrymple's testimony were not evident until the transcript of a suppression hearing, held on December 10, 1981, became available. Since the pretrial report was filed on April 15, 1981, it was not possible to file the motion in conformity with the precise requirements of the rule. These circumstances, however, only excuse noncompliance with the literal requirements of the rule; they do not excuse the delay during the period when the transcript became available. Since the record shows that a transcript of the suppression hearing was available very soon after the hearing, the defendants had ample time prior to trial to file the motion to dismiss. In these circumstances, the judge did not abuse the discretion which the rule vests in him to determine "such other time" when a motion shall be filed. *Commonwealth* v. *Pope, supra.* See *Commonwealth* v. *McColl, supra.*

Because of the seriousness of this claim and because one testimonial discrepancy (whether Bongarzone accompanied Officer Dalrymple out to the Bronco to examine the marihuana) did not become evident until trial, we comment on the merits of the defendants' claim. "There can be no doubt that the knowing use by the Commonwealth or one of its agents of false testimony to procure an indictment is a ground for dismissing the indictment." *Commonwealth* v. *Salman,* 387 Mass. 160, 166 (1982). In the present case, the defendants failed to show that the false testimony was calculated to procure any indictments or had such an effect.[9] Officer Dalrymple testified on voir dire that the discrepancies either were the result of a lapse of memory or were intended to benefit the defendant Bongarzone. The false testimony, viewed objectively, was not designed to procure an indictment against any of the defendants. See *Commonwealth* v. *Dilone,* 385 Mass. 281, 284 (1982) (minor discrep-

---

[9] The judge conducted a lengthy voir dire concerning Officer Dalrymple's testimony. During the voir dire, the motion to dismiss was renewed.

ancies between evidence presented to grand jury and evidence presented at trial cannot invalidate the indictment): *Commonwealth* v. *Francil,* 15 Mass. App. Ct. 35, 39 (1982) (no showing that grand jury proceedings had been impaired). Contrast *Commonwealth* v. *Salman, supra* (false testimony used *to procure* indictment).[10]

3. *Severance under Bruton.* The defendants Carfagna, Smith, and Trapp argue that the trial judge's refusal to grant their motions to sever violated the confrontation clause of the Sixth Amendment to the United States Constitution under the doctrine of *Bruton* v. *United States,* 391 U.S. 123 (1968). Their claim is based on the admission in evidence of statements made by Bongarzone, who did not testify and therefore was not subject to cross-examination.

The judge denied the motions after the Commonwealth represented that it intended to proceed on a theory of joint enterprise. During the Commonwealth's case-in-chief, the judge delivered limiting instructions to the effect that extrajudicial statements of a defendant were admissible solely against that defendant. At the close of the Commonwealth's case, he found that the Commonwealth had introduced sufficient evidence to establish the existence of a joint enterprise involving all four defendants. The judge later instructed the jury that they had to find that a joint enterprise existed before they could consider the extrajudicial statements of each defendant against the other defendants. He also delivered an instruction that any joint enterprise that might have existed came to a conclusion when Trapp and Smith were stopped and arrested.

---

[10] A charge of impropriety is also levelled against the prosecutor. In *Commonwealth* v. *Salman, supra* at 167, we said that a prosecutor should request the dismissal of an indictment if it becomes known that false testimony was used to obtain it. In the present case, the prosecutor was not under such a duty. We believe, however, that he did have a duty to make defense counsel and the judge aware of false testimony which an agent of the Commonwealth might have given before the grand jury when that circumstance became known. Cf. S.J.C. Rule 3:08, PF 12, as appearing in 382 Mass. 802 (1981) (formerly S.J.C. Rule 3:22A). The record does not show any breach of that duty.

It is settled that the extrajudicial statements of coconspirators or joint criminal venturers may be admissible against the others involved if the existence of the conspiracy or joint venture has been shown by other evidence. *Commonwealth* v. *Borans*, 379 Mass. 117, 146 (1979). *Commonwealth* v. *Beckett*, 373 Mass. 329, 338 (1977). *Commonwealth* v. *Pleasant*, 366 Mass. 100, 103-104 (1974). Proposed Mass. R. Evid. 801 (d) (2) (E). Fed. R. Evid. 801(d) (2) (E). "An adequate probability of the existence of the common venture, including participation by the given defendant, [must] be established as a preliminary matter." *Commonwealth* v. *White*, 370 Mass. 703, 709 n.7 (1976). The statements must also have been made during the pendency of the cooperative effort and in furtherance of its goal. *Commonwealth* v. *Pleasant, supra* at 104. Proposed Mass. R. Evid. 801 (d) (2) (E). Fed. R. Evid. 801 (d) (2) (E). This exception to the rule against hearsay is premised on a belief that "[t]he community of activities and interests which exists among the coventurers during the enterprise tends in some degree to assure that their statements about one another will be minimally reliable." *Commonwealth* v. *White, supra* at 712.[11]

a. *Carfagna.* There was ample evidence, apart from the statements made by Bongarzone, to support a finding that Bongarzone and Carfagna had entered into a joint criminal enterprise. There was evidence that after Bongarzone made a gesture to him, Carfagna joined Bongarzone and Officer Dalrymple in Bongarzone's kitchen. Several minutes later, Carfagna accompanied them outside to examine the marihuana. Carfagna told Officer Dalrymple that the trash bags contained marihuana. Carfagna also agreed to disconnect one of the Bronco's taillights so that Officer Dalrymple would have an excuse to stop the vehicle later.

---

[11] Confessions or admissions of conspirators or joint venturers, made after the termination of the conspiracy or joint venture, are not admissible, as matter of State law, as vicarious statements of the members of the conspiracy or joint venture. *Commonwealth* v. *White, supra* at 708-712.

After Officer Dalrymple had returned with a police cruiser, Carfagna drove the truck to the Commercial House, where he transferred possession of the Bronco and marihuana to Smith and Trapp. A short time later, the Bronco was stopped with fifteen trash bags of marihuana inside. The Commonwealth introduced sufficient evidence to warrant a finding as to the existence of a joint criminal venture between Bongarzone and Carfagna. The admission of the statements made by Bongarzone on the night of January 21, 1981, including those made to Officer Dalrymple before Carfagna joined the conversation, did not constitute error. *Commonwealth* v. *Borans, supra* at 146-148.

We must also consider whether the statements made by Bongarzone to Officer Dalrymple after the termination of the venture requires reversal of Carfagna's convictions. Since the community of interests between the joint venturers had been terminated, such statements lack sufficient indicia of reliability to be admissible. *Commonwealth* v. *White, supra.*

The statements here were to the effect that Bongarzone was sorry that he had gotten Officer Dalrymple involved and that Bongarzone would need a good lawyer. The Commonwealth argues that these statements, as well as those made during the venture, are admissible under *Parker* v. *Randolph*, 442 U.S. 62 (1979). It notes that Dalrymple's testimony contained several damaging statements made by Carfagna himself, which interlocked with the statements made by Bongarzone. In *Parker* v. *Randolph, supra,* a majority of the Justices saw no need to reverse the defendants' convictions on *Bruton* grounds where their out-of-court confessions interlocked. *Id.* at 75 (plurality opinion) and at 77 (Blackmun, J., concurring). Four Justices reasoned that the admission did not violate *Bruton, id.* at 75 (plurality opinion), and a fifth Justice found the error to be harmless beyond a reasonable doubt, *id.* at 77 (Blackmun, J., concurring). Our own opinions have assumed that the plurality opinion in *Parker* is correct. *Commonwealth* v. *Bianco,* 388 Mass. 358, 366 (1983). *Commonwealth* v. *Horton,*

376 Mass. 380, 389 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts*, 440 U.S. 923 (1979). *Commonwealth* v. *Scott*, 355 Mass. 471, 477-478 (1969). We need not decide whether the rationale of *Parker* applies to this case since any error was harmless beyond a reasonable doubt. We have stated already that the statements made on the night of January 21, 1981, were properly admitted. The statements made after that evening were merely cumulative. Further, the jury also had before them Carfagna's own statements and acts which were damaging. The judge also delivered appropriate instructions directing the jury to consider these statements only against Bongarzone. He also instructed them that, as matter of law, any joint venture terminated with the arrest of Smith and Trapp. In these circumstances, any error was harmless. See *Parker* v. *Randolph, supra* at 77, 81 (Blackmun, J., concurring); *Brown* v. *United States*, 411 U.S. 223 (1973); *Schneble* v. *Florida*, 405 U.S. 427 (1972); *Harrington* v. *California*, 395 U.S. 250 (1969); *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 10 (1973); *Commonwealth* v. *Graves*, 363 Mass. 863, 864-873 (1973).

b. *Smith and Trapp.* The Commonwealth essentially concedes that Bongarzone's statements tended to inculpate Smith and Trapp. While Officer Dalrymple's version of his conversation with Bongarzone referred only to "two dealers from Hull," it is clear that the two dealers were Smith and Trapp. See *Commonwealth* v. *LeBlanc, supra* at 8. The Commonwealth's cross-examination of Smith ensured that the jury did not miss this point.

The Commonwealth's argument is that the statements were admissible under the joint venturer's rule described above. See *Commonwealth* v. *Borans, supra.* It argues that the trial judge and jury could have inferred the existence of a joint venture from the presence of Smith's Bronco in Bongarzone's driveway and from the circumstances surrounding the transfer of the marihuana at the Commercial House.

The difficulty with the Commonwealth's argument is that the statements must further some common objective of

the joint criminal venture. See *United States* v. *Fielding,* 630 F.2d 1357, 1365 (9th Cir. 1980); *United States* v. *Eubanks,* 591 F.2d 513, 520 (9th Cir. 1979). Unless the statements further a common objective, the community of interests, which is thought to assure that the statements which coventurers make about one another are reliable, is absent. See *Commonwealth* v. *White, supra.* Bongarzone's statements to Officer Dalrymple constituted an offer and agreement to enter into a new and distinct joint venture. The common objective of the venture was to retain possession of the marihuana, which conflicted with the common objective of any joint venture which might have existed earlier. As a consequence, Bongarzone's statements were not admissible against Smith and Trapp, and their admission violated *Bruton.* See *United States* v. *Fielding, supra.*[12]

---

[12] We do not decide whether Bongarzone's statements were admissible against Smith and Trapp as statements against penal interest. See *Commonwealth* v. *Carr,* 373 Mass. 617, 620-625 (1977). We have not applied the doctrine to render admissible a codefendant's out-of-court admission against another defendant.

The problem has received much attention in the Federal courts. In *United States* v. *Lieberman,* 637 F.2d 95, 103-104 (2d Cir. 1980), the court held that a coconspirator's statement, which was not admissible because it had not been made in furtherance of the conspiracy, was admissible against the defendant as a declaration against penal interest. The decision has been criticized, especially for its failure to consider whether the confrontation clause was violated. 4 J. Weinstein & M. Berger, Evidence at 80-81 (Supp. 1982).

Other Federal cases have stated that the test whether a declaration against penal interest is admissible — whether the statement inculpates or exculpates a defendant — is the same as the *Carr* test. These cases, however, recognize that the statement must possess some indicia of reliability to satisfy the confrontation clause. See *United States* v. *Riley,* 657 F.2d 1377, 1383 (8th Cir. 1981), cert. denied, 459 U.S. 1111 (1983); *United States* v. *Palumbo,* 639 F.2d 123, 130-134 (3d Cir. 1981) (Adams, J., concurring), cert. denied, 454 U.S. 819 (1981); *United States* v. *Alvarez,* 584 F.2d 694, 700-701 (5th Cir. 1978). Cf. *Ohio* v. *Roberts,* 448 U.S. 56 (1980).

We do not pass on the point here because our consideration would be handicapped by the failure of the Commonwealth to raise the issue below or to argue it before us. We therefore lack any findings by the trial judge concerning the reliability of the statements or any well developed arguments concerning the state of the law in this area.

The Commonwealth also claims that any error was harmless. It argues that the evidence against Smith and Trapp was overwhelming and that any prejudice which might have occurred to them as a result of Bongarzone's statements was minimal in light of Carfagna's statements. It also argues that the opportunity to cross-examine Carfagna concerning those statements, which were uttered in his presence, eliminated much of the prejudice.

As to the Commonwealth's latter argument, which was not raised below, we reject the suggestion that the opportunity to cross-examine a testifying codefendant who, by his silence, may have "adopted" the statements of a nontestifying declarant is the equivalent of cross-examining the declarant. The difficulties of cross-examination in this situation are simply too great. This point is highlighted by the rule that a statement which has been adopted by silence may be used only against the silent individual. See Proposed Mass. R. Evid. 801 (d) (2) (B); Fed. R. Evid. 801(d) (2) (B); P.J. Liacos, Massachusetts Evidence 276 (5th ed. 1981).[13]

The Commonwealth presents a more plausible claim in arguing that the weight of the evidence against Smith and Trapp rendered the error harmless. They were arrested with large trash bags containing approximately 300 pounds of marihuana. Possession of such a quantity of a controlled substance creates an inference that the defendants intended to distribute it. *Commonwealth* v. *Scala,* 380 Mass. 500, 511 (1980). The circumstances surrounding the transfer and Carfagna's statements provided additional evidence against them. Further, Carfagna's repudiation of Officer Dalrymple's testimony may have lessened the degree of prejudice.

---

[13] We do not decide whether Bongarzone's statements were admissible against Carfagna under the doctrine of adoptive admissions. While, arguably, Carfagna may have been expected to deny at least some of Bongarzone's statements, we have approached the doctrine with caution and have not been inclined to expand it. See *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 316 (1973); *Leone* v. *Doran,* 363 Mass. 1, 16 (1973), and cases cited.

The Commonwealth, however, offered no inculpatory statements made by Smith and Trapp themselves. The existence of such statements has been an important factor in cases where a *Bruton* violation was held to be harmless. See *Brown* v. *United States,* 411 U.S. 223 (1973); *Schneble* v. *Florida,* 405 U.S. 427 (1972); *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 10 (1973). While such statements are not necessary to a finding of harmless error, see *Harrington* v. *California,* 395 U.S. 250 (1969), the prejudice to the defendants here is too great to permit us to find the error harmless.

Two factors dictate this result. First, Smith and Trapp were portrayed in Bongarzone's statements as professional drug dealers who had stolen the marihuana from other dealers and who had threatened Carfagna with physical harm. Thus, the statements contained an inflammatory edge which may have unfairly prejudiced the defendants.

Second, Bongarzone's statements supplied damaging evidence of the mental state necessary to support a finding of possession. To warrant a finding of possession of contraband, "[i]t is not enough to place the defendant and the [contraband] in the same car." *Commonwealth* v. *Boone,* 356 Mass. 85, 87 (1969). The Commonwealth also had to establish knowledge of the contraband and, at the very least, ability and intent to exercise dominion and control as to each defendant. See *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 563, 567 (1980), and cases cited. Bongarzone's statements, if believed, served to undercut any suggestion that Smith and Trapp, or either one of them, did not have knowledge of the marihuana, as well as intent to exercise dominion over it. While there was sufficient evidence from independent sources to support findings against the defendants concerning possession, we cannot say that the error was harmless. Absent Bongarzone's statements, the jury may have retained some doubt, especially as to whether Smith and Trapp possessed the marihuana jointly. The error,

therefore, requires the reversal of the judgments against Smith and Trapp.[14]

4. *Jury instructions.* The defendant Bongarzone claims two errors in the instructions to the jury. First, he argues that the judge, in instructing the jury on joint venture, failed to indicate that the Commonwealth had to prove that each defendant actively participated in the joint venture. He points to a portion of the charge where the judge stated that "[i]t is sufficient for the Commonwealth to show that a defendant was aware that he was a party to an unlawful agreement." There was no error.

We do not believe that the defendant raised, in specific terms, this objection to the charge below, and he therefore has waived his right to argue the point before us. *Commonwealth* v. *Coleman,* 389 Mass. 667, 671 (1983). Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). We note, however, that the argument is without merit. The challenged portion of the charge concerned only the specific criminal intent necessary under a theory of joint venture. Looking at the charge in its entirety, *Commonwealth* v. *Ely,* 388 Mass. 69, 73-75 (1983), it is quite clear that the judge correctly instructed the jury. Specifically, he stated that a defendant "must actively participate in it [the joint venture] and must do something in furtherance of it." There was no error in this regard.

Bongarzone also argues that the judge erred in instructing the jury that they could find the defendant guilty, either under a theory of joint venture or under a theory of individual culpability.[15] The argument is that by allowing

---

[14] An argument also is advanced by Smith and Trapp that the teachings of *Commonwealth* v. *Moran,* 387 Mass. 644, 658-659 (1982), mandated severance. In that case, we said that the unfairness to the defendants of a joint trial "need not reach the level of deprivation of constitutionally guaranteed due process in order to require severance." *Id.* at 658 n.5. We found such unfairness in that "[t]he only realistic escape for either defendant was to blame the other." *Id.* at 659. Having disposed of the matter under *Bruton* principles we need not consider this argument.

[15] This objection was raised by Smith's counsel. Later, the judge, to avoid repetition, afforded the other defense counsel an opportunity to

the case to go to the jury under both theories the jury are permitted to use the evidence which came in under the joint venture exception to the hearsay rule against the defendant on the theory of individual culpability. This argument is misplaced in light of the judge's charge. The judge instructed the jury that the statements of the joint venturer were to be considered against Bongarzone only if they found a joint venture. See *Commonwealth* v. *Borans*, 379 Mass. 117, 146 (1979); *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972). There was no error.

We have concluded, however, that the Commonwealth failed to produce sufficient evidence to warrant a finding of the existence of a joint criminal venture among all four defendants. Thus, the jury properly could not have considered the acts and statements of Smith and Trapp as Bongarzone's own acts and statements. To that extent, the instructions were erroneous. But in light of Bongarzone's own damning pretrial statements, which were in evidence, as well as the other evidence which was properly before the jury, the error was harmless beyond a reasonable doubt.

The defendant Trapp raises a claim of error which we consider briefly because it may arise at a new trial.[16] The claim of error concerns whether the judge erred in his instructions concerning the elements of possession. Trapp argues that the judge failed to indicate that possession must be knowing. See *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980).

---

join in those objections. At the conclusion of the bench conference, Bongarzone's counsel indicated that he wished to join in the objections raised by the other defense counsel. While it may be better practice to require each counsel to object with specificity to each error which may affect his client, we believe that the objection was sufficient to bring the claim of error before us.

[16] Trapp also claims error in that the judge did not instruct the jury concerning the significance of the termination of the joint venture. While we doubt that the judge erred, we do not pass on it because the argument is directed at the statements and acts of Bongarzone and Carfagna after January 21, 1981. These statements and acts will not be admissible at a new trial.

The judge made it abundantly clear that "mere presence in the vicinity of a narcotic drug or mere knowledge of its physical location does not constitute possession" and that the Commonwealth bore the burden of showing that the defendant had "consciously, voluntarily, and purposely" possessed the marihuana. There was no error.

5. *Sufficiency of the evidence against Bongarzone and Trapp.* The defendants Bongarzone and Trapp argue that the judge erred in not entering required findings of not guilty. In reviewing the propriety of the denial of a motion for required findings of not guilty, we examine the record at the close of the Commonwealth's case-in-chief to determine whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crimes beyond a reasonable doubt. *Commonwealth* v. *Burrell,* 389 Mass. 804, 805 (1983). *Commonwealth* v. *Cinelli,* 389 Mass. 197, 203 (1983). *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-678 (1979).

a. *Bongarzone.* At the close of the Commonwealth's case-in-chief and at the close of all the evidence, the defendant Bongarzone moved for the entry of required findings of not guilty with respect to both indictments. See Mass. R. Crim. P. 25, 378 Mass. 896 (1979). On appeal, he has not argued that the evidence was insufficient on the indictment charging a violation of G. L. c. 268A. That claim is therefore waived. *Commonwealth* v. *Louraine, ante* 28 (1983). Mass. R. A. P. 16(a)(4), as amended, 367 Mass. 919 (1975). Arguably, we need not consider the sufficiency of the evidence concerning the other indictment because the maximum term provided by G. L. c. 94C, § 32C (*a*), as appearing in St. 1980, c. 436, § 4, under which Bongarzone is to be resentenced, is two years, and the concurrent sentence imposed under G. L. c. 268A was from two to three years. General Laws c. 94C, § 32C (*a*), however, provides that the judge may impose a fine in lieu of a jail sentence or in addition to a jail sentence. Therefore, we will consider the sufficiency of the evidence on so much of the indictment which charges possession with intent to distribute marihuana.

We conclude that the Commonwealth produced ample evidence indicating that Bongarzone both possessed the marihuana and did so with the intent to distribute. From Officer Dalrymple's testimony, the jury had sufficient evidence to conclude that the Bronco contained marihuana, that Bongarzone knew it contained marihuana, and that he exercised dominion and control over it or had the ability and intent to control it. See *Commonwealth* v. *Rugaber*, 369 Mass. 765, 769-770 (1976); *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974); *Commonwealth* v. *Fiore*, 9 Mass. App. Ct. 618, 624, cert. denied, 449 U.S. 938 (1980). Further, "[p]ossession need not be exclusive but may be joint." *Commonwealth* v. *Dinnall*, *supra* at 168. Intent to distribute the marihuana may have been inferred either from Bongarzone's own statements as reported by Officer Dalrymple or from possession of a large quantity. See *Commonwealth* v. *Scala*, 380 Mass. 500, 511 (1980); *Commonwealth* v. *Ellis*, 356 Mass. 574, 578-579 (1970). The evidence was sufficient to take the case to the jury.

Trapp also filed motions for the entry of a required finding of not guilty at the close of the Commonwealth's case and at the close of all the evidence. We consider the issue not only because it may arise at a new trial, but also because of the defendant's right not to be placed in jeopardy twice. See *Burks* v. *United States*, 437 U.S. 1 (1978). Trapp essentially contends that the Commonwealth has proved nothing but his mere presence in a van filled with marihuana.

The evidence was sufficient to support a finding that Trapp was aware that the Bronco was carrying marihuana. There was evidence that Trapp had examined the contents of the Bronco outside the Commercial House. Further, Officer Dalrymple testified that the odor of the marihuana was emanating from the trash bags. There was also sufficient evidence to support findings that Trapp had control over the marihuana. Carfagna's statements, which were properly admitted under *Bruton*, and the circumstances of the transfer, indicate that Trapp did intend to possess the marihuana. The intent to distribute may be inferred from

the quantity involved. *Commonwealth* v. *Scala, supra.* There was no error in denying the motion.

6. *Motion to suppress.* The defendant Trapp claims that a motion judge of the Superior Court erred in denying his motion to suppress the marihuana which was seized. The defendants Carfagna and Smith joined in the motion below, but have abandoned this claim here. After a hearing, the judge denied the motion and entered written findings of fact and rulings of law.

The motion judge's findings of fact were consistent with Officer Dalrymple's testimony at trial. We, therefore, elaborate only briefly concerning the actual search and seizure. The judge found that Dalrymple and other police stopped the Bronco and ordered Smith and Trapp out of it at gunpoint. After several brief inquiries, a police officer other than Dalrymple opened the tailgate and saw the fifteen trash bags. Several of the bags were torn, thereby disclosing their contents. The Bronco was impounded and taken to the Weymouth police station. There, the bags were removed and weighed.

Trapp concedes that, under the so called automobile exception to the warrant requirement (see *Chambers* v. *Maroney,* 399 U.S. 42 (1970); *Carroll* v. *United States,* 267 U.S. 132 [1925]), the police in certain circumstances may execute a warrantless search of a mobile vehicle where there is probable cause to search the vehicle for contraband. In his brief, Trapp argues, however, that the marihuana must be suppressed because the police failed to avail themselves of an adequate opportunity to obtain a search warrant. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 458-464 (1971). 2 W.R. LaFave, Search and Seizure § 7.2, at 519-525 (1978). But see *United States* v. *Ross,* 456 U.S. 798, 823 & n.32 (1982). We need not decide under what circumstances the failure of the police to avail themselves of an adequate opportunity to obtain a search warrant may render an otherwise valid search unconstitutional. In the present circumstances, the police did not have sufficient opportunity.

"If, under *Chambers,* an opportunity to obtain a search warrant prior to the seizure of an automobile invalidates its search, the opportunity must be plain and ample." *United States* v. *Newbourn,* 600 F.2d 452, 457 (4th Cir. 1979). The entire incident from the telephone call from Bongarzone to Officer Dalrymple, to the arrest of Smith and Trapp consumed less than two hours. The police diligently pursued their investigation and cannot be faulted because they chose to implement their scheme quickly. See 2 W.R. LaFave, Search and Seizure, *supra* at 522.[17]

The search could also be sustained as being a search incident to arrest, and thus not subject to the warrant requirement. In *New York* v. *Belton,* 453 U.S. 454, 460 (1981), the United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] examine the contents of any containers found within the passenger compartment" even without a search warrant. It is irrelevant that the occupant is standing outside the vehicle at the time of the arrest. *New York* v. *Belton, supra* at 456, 462. In the present case, the police were not barred from searching the entire passenger compartment and any containers found there.[18] The passenger

---

[17] Trapp also seeks review of claims raised in a memorandum of law which was presented to a single justice of this court during a hearing on an application for an interlocutory appeal. We decline to do so. The memorandum is reprinted in the defendant's appendix. The memorandum is not properly before us. This method of briefing does not conform fully to the requirements of the appellate rules. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *Miaskiewicz* v. *LeTourneau,* 12 Mass. App. Ct. 880, 882 (1981). See *Drain* v. *Brookline Sav. Bank,* 327 Mass. 435, 438 (1951). Further, Trapp has made no effort to consider the significance of a perhaps controlling decision of the United States Supreme Court which was issued after his petition for interlocutory appeal. See *United States* v. *Ross,* 456 U.S. 798 (1982). In *Ross,* the Court held that "[i]f probable cause justifies the [warrantless] search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

[18] The present case is distinguishable from *Commonwealth* v. *Toole,* 389 Mass. 159 (1983), which construed G. L. c. 276, § 1. Here the search

compartment of the Bronco encompassed the rear portion of the vehicle since it was within the reach of the defendants without their alighting from the vehicle. See *United States* v. *Russell,* 670 F.2d 323 (D.C. Cir.), cert. denied, 457 U.S. 1108 (1982). Thus, the police did not act improperly by opening the tailgate or examining the contents of the trash bags. There was no error.

7. *Disposition.* The judgments are affirmed on the indictments against the defendants Bongarzone and Carfagna, which charge violation of G. L. c. 268A, § 2.

The judgments are reversed against the defendants Bongarzone and Carfagna in so far as the indictments charge violations of G. L. c. 94C, § 32E (*a*), and the verdicts are set aside in so far as they find the defendants Bongarzone and Carfagna guilty of such violations. The cases are remanded to the Superior Court, where the judge is to enter an order dismissing the indictments except as to the lesser included offense of possession of marihuana with intent to distribute. Findings of guilty of that offense may be be entered, and the defendants Bongarzone and Carfagna may be sentenced pursuant to G. L. c. 94C, § 32C (*a*), as appearing in St. 1980, c. 436, § 4, which punishes possession of marihuana with intent to distribute.

The judgments are reversed on the indictments against the defendants Trapp and Smith. Their cases are remanded for further proceedings consistent with this opinion.

*So ordered.*

---

was conducted for the purpose of seizing contraband which the police had probable cause to believe would be found in a mobile vehicle. See *Commonwealth* v. *King,* 389 Mass. 233, 246 n.16 (1983).