COMMONWEALTH vs. ALFRED D. BAKOIAN.

Essex. December 5, 1991. - March 23, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Probable Cause.*
*Search and Seizure*, Automobile, Probable cause, Exigent circum-
stances. *Practice, Criminal*, Disclosure of identity of informer.

A tip from a confidential police informant that provided specific nonobvi-
ous and predictive detailed information that was corroborated by police
sufficiently established the informant's reliability and personal basis of
knowledge [298-302], and supplied the police with probable cause to
believe that a certain automobile contained heroin [302].
Exigent circumstances justified police officers' search of a motor vehicle for
narcotics without a search warrant [303-305], and the scope of the
search properly extended to the entire vehicle [305-306].
At a hearing on a motion to suppress evidence seized in a warrantless
search of an automobile, wherein the prosecution chose to prove a confi-
dential informant's basis of knowledge indirectly by inferences from the
tip provided rather than to employ direct proof, which would have re-
vealed the informant's identity, the judge properly precluded defense
counsel's attempt to elicit what the informant had stated to police
about his or her basis of knowledge, while affording the defendant a full
opportunity to challenge the facts presented at the hearing and to re-
fute the inferences that might be drawn therefrom. [306-308]


INDICTMENT found and returned in the Superior Court De-
partment on April 5, 1989.

A pretrial motion to suppress evidence was heard by *John
C. Cratsley*, J.

An application for interlocutory appeal was allowed by
*Greaney*, J., in the Supreme Judicial Court for the county of
Suffolk and the appeal was reported by him.

*William J. Meade*, Assistant District Attorney, for the
Commonwealth.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

NOLAN, J. On April 5, 1989, an Essex County grand jury indicted the defendant, Alfred D. Bakoian, on a charge of possession of heroin with intent to distribute. At a pretrial hearing, the defendant moved to suppress the heroin, asserting that the warrantless search of the vehicle in which he was a passenger and the consequent seizure of the heroin were illegal for lack of probable cause and exigent circumstances justifying the search. The motion judge ruled that the police had probable cause to believe that the vehicle contained contraband, but he concluded that no exigent circumstances existed which disposed of the requirement of obtaining a warrant prior to conducting the search. The judge entered an order suppressing the heroin. The Commonwealth applied to a single justice of this court, pursuant to Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979), for leave to obtain review of this ruling. The single justice allowed the Commonwealth's application for interlocutory review and transferred the case to the Appeals Court. We granted the defendant's application for direct appellate review. For the reasons hereinafter set forth, we vacate the order of suppression and direct the entry of an order denying the defendant's motion to suppress.

We set forth the facts of this case as found by the motion judge. On February 9, 1989, at approximately 3 P.M., a confidential informant telephoned Detective Kenneth Avery of the Lynn police department and told him that Alfred Bakoian, the defendant, and an individual named John Walsh were en route from Rhode Island to Lynn with a shipment of heroin. The informant stated that these individuals were traveling in a black Thunderbird automobile with a beige roof, bearing Massachusetts registration number 420TCZ. The confidential informant further informed Detective Avery that the defendant and Walsh soon would arrive at the defendant's apartment. Detective Avery had previously arrested the defendant at Logan Airport for a heroin offense and thus knew his address to be 20 Surfside Road in Lynn.

Detective Avery thereafter communicated with other Lynn police officers and directed them to set up a surveillance at the defendant's residence. For his part, Avery parked on the General Edwards Bridge in Lynn and waited for the passing of the automobile. At approximately 4 P.M., Avery saw an automobile fitting the description he received from the confidential informant. He recognized the driver and passenger of that automobile as John Walsh and the defendant, respectively. Avery radioed the surveillance officers and told them of his observation. Avery then drove to the defendant's apartment.

The surveillance officers detained the defendant and John Walsh in the rear parking lot of the defendant's apartment building. Moments later, Avery arrived and noticed that the hood of the automobile was "ajar." Avery searched under the hood and retrieved a quantity of heroin from underneath the air filter.

1. *Probable cause.* The motion judge found that the Lynn police had probable cause to search the subject vehicle, based on the precise information provided to them by the confidential informant and the independent police corroboration of the details of that information. *Commonwealth* v. *Robinson*, 403 Mass. 163 (1988). The judge noted that Detective Avery and other Lynn police officers knew the informant to be a credible source of information in the past, and that they had verified the informant's information on this occasion in almost every detail prior to detaining the defendant and Walsh. *Id.* at 168. The judge further found that the level of detail supplied by the informant as to the identity of the defendant and his companion, their general route of travel, and the vehicle in which they rode allowed for the inference that the informant spoke from personal knowledge, and not on the basis of unfounded rumor. *Commonwealth* v. *Cast*, 407 Mass. 891, 897 (1990). The judge concluded that the Commonwealth adequately established the informant's basis of knowledge by the reasonable inferences to be drawn from Detective Avery's testimony. *Robinson, supra.* We accept a judge's findings of fact, in the absence of clear error, and

grant substantial deference to the conclusions of law based thereon. *Cast, supra* at 897, citing *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). Under this rule we conclude that there is no error.

In order successfully to establish probable cause to search the vehicle on the basis of information supplied by a confidential informant, the Commonwealth had to "demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the 'basis of knowledge' test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the 'veracity' test)." *Cast, supra* at 896, citing *Robinson, supra* at 164-165. Deficiencies in the proof required under either or both prongs of the test may be compensated for by police corroboration of an informant's detailed tip. *Cast, supra.*

In support of its claim that the Lynn police had probable cause to search the vehicle, the Commonwealth presented the testimony of Detective Avery, which described the informant's past reliability and the independent police corroboration of the details of the informant's tip in the instant matter. The Commonwealth did not present direct testimony as to the confidential informant's basis of knowledge, stating that such testimony would reveal the informant's identity, which the government is privileged to withhold.[1] See *Commonwealth* v. *Amral*, 407 Mass. 511, 516 (1990) (discussing government's privilege of nondisclosure of an informant's identity). On appeal, the Commonwealth asserts that the judge correctly ruled that the basis of the informant's knowledge could be inferred from the corroborated, detailed information provided to the Lynn police. *Robinson, supra* at 166.

The defendant argues that the information supplied by the confidential informant did not provide the police with probable cause to search the vehicle.[2] Specifically, the defendant

---

[1] See discussion of informer privilege, *infra* at 306-308.

[2] The Commonwealth contends that the defendant is not entitled to raise this argument, since he failed to seek leave for review of the judge's ruling on probable cause pursuant to Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). *Commonwealth* v. *Bass*, 24 Mass. App. Ct. 972, 974 (1987). However, since the defendant argues lack of probable cause as a ground

contends that the Commonwealth's failure to introduce evidence of the informant's basis of knowledge precluded a finding of probable cause.[3] See *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985). The tip, according to the defendant, did not possess sufficient indicia of the informant's reliability to justify the police action. As support for this argument, the defendant relies on *Commonwealth* v. *Lyons*, 409 Mass. 16 (1990). We do not agree with the defendant's contentions and conclude that the facts of this case are easily distinguished from those at issue in *Lyons*, justifying a different outcome in this matter.

In *Lyons*, we considered whether police justifiably conducted an investigatory stop of a vehicle traveling on a public way on the basis of a tip received from an anonymous informant. The unidentified caller in *Lyons* reported that two white males, one of whom was named Wayne, were in route from Chelsea, Massachusetts, to Bridgton, Maine, in a silver Hyundai automobile with Maine registration number 44044T, transporting a quantity of narcotics. *Lyons*, *supra* at 17. In evaluating "the tip's indicia of reliability [the court] focused on the informant's reliability and his or her basis of knowledge." *Id.* at 19. The court noted that "police corroboration [of the informant's tips] may make up for deficiencies in one or both of these factors." *Id.*

---

for upholding the order to suppress the evidence, we address the issue, which has been fully briefed by the parties. *Commonwealth* v. *Mottola*, 10 Mass. App. Ct. 775, 781 (1980). See *Commonwealth* v. *Assad*, 393 Mass. 418, 423 (1984).

[3] At the hearing, the defendant also challenged the sufficiency of the Commonwealth's evidence to establish the veracity of the informant. (Detective Avery testified that the confidential informant previously had provided the Lynn police with information which led to the arrest of an individual and the seizure of heroin.) The defendant conceded at oral argument before this court, however, that the evidence allows for a finding of the informant's veracity, in light of decisions rendered by this court subsequent to the time of the motion hearing. See *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991) (holding that prior tip which leads to arrest *and seizure of narcotics* sufficient to establish past reliability of confidential informant). The veracity of the informant is not, therefore, an issue in this appeal.

The court concluded in *Lyons* that the tip failed to provide any information on which the informant's reliability could sufficiently be established because "[t]he tip provided no information regarding either the basis of the informant's knowledge or his reliability." *Lyons*, *supra* at 20. The information provided by the informant, we observed, related solely to "obvious details" and did not suggest that the informant had "any special familiarity with the defendant's affairs that might substitute for explicit information about the basis of the caller's knowledge." *Id.* at 20-21 & n.5. In this respect, the court distinguished the circumstances in *Lyons* from the situation presented in *Alabama* v. *White*, 496 U.S. 325 (1990), wherein the Supreme Court upheld an investigatory stop of a vehicle on the basis of police corroboration of nonincriminating details provided by an anonymous tip.[4] While acknowledging that the Supreme Court decided the *White* case using the "totality of the circumstances" standard — an analysis rejected by this court as lacking the precision that should be articulated in determining the existence of probable cause or reasonable suspicion, see *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985) — the court noted that the tip at issue in *Lyons* probably would not pass muster under the more flexible *White* standard either. *Lyons*, *supra* at 21 n.5. The court explained that the information provided by the informant in *White*, unlike that given by the *Lyons* informant, essentially "predict[ed] 'future behavior'" by the suspect which, when verified, supplied a basis to infer that the informant's tip was grounded in personal knowledge. *Lyons*, *supra*, quoting *White*, *supra* at 332. Consequently, the court held in *Lyons* that, in order to conclude that a tip from an anonymous caller is reliable, the tip must provide "some specificity of nonobvious facts which show familiarity

---

[4]In *Alabama* v. *White*, 496 U.S. 325 (1990), the informant provided police with specific information regarding the defendant's future behavior, including the approximate time she would leave a particular building, the particular automobile she would drive on leaving, and the particular place where she would go thereafter.

with the suspect or specific facts which predict behavior."
*Lyons, supra* at 21-22.

In our view, the tip in the present case is distinguishable
from the tip considered in *Lyons* and meets the standard for
reliability set forth in that case. As an initial matter, we deal
in this case with an informant who revealed his or her iden-
tity at the time he or she provided the tip to the police.
Detective Avery testified that he knew this person previously
had provided reliable information to the Lynn police. We do
not here confront, therefore, as we did in *Lyons*, a situation
involving an anonymous informant and the concern that
"[a]nyone can telephone the police for any reason." *Lyons,
supra* at 21. The identification of the instant informant to
the police strengthened his or her credibility and "carrie[d]
with it indicia of reliability of the informant." *Common-
wealth v. Atchue*, 393 Mass. 343, 347 (1984), quoting
*United States v. Wilson*, 479 F.2d 936, 940 (7th Cir. 1973).
See *Commonwealth v. Rojas*, 403 Mass. 483, 485 n.2
(1988). Furthermore, and more importantly, unlike the situa-
tion in *Lyons*, the present informant provided specific infor-
mation to the police, the details of which were not "easily
obtainable by an uninformed bystander." *Lyons, supra* at 21.
Most notably, the informant stated the exact identities of the
persons occupying the vehicle,[5] their exact destination, and
the approximate time frame within which they would arrive
at the destination location. This information, in our view,
"bespeak[s] the kind of 'inside information,' " which demon-
strates the informant's "special familiarity with the [defend-
ant's] affairs" and supports the conclusion that the informa-
tion is based on personal knowledge. *Lyons, supra* at 21 n.5,

---

[5]In *Lyons*, the informant did not provide the last name of the defendant
or the name of the defendant's companion. Moreover, the police officer
could not verify the first name of the defendant until after he stopped the
vehicle and requested the defendant's driver's license. *Commonwealth v.
Lyons*, 409 Mass. 16, 17 (1990). In the present case, by contrast, the in-
formant told Detective Avery both the first and last name of the defendant
and his companion, and Detective Avery verified this information when he
observed these individuals drive past him on the bridge.

quoting *White, supra* at 332. The informant's ability to pre-
dict accurately the defendant's destination, in particular, in-
dicated that he or she had special knowledge of relevant facts
and circumstances. The police corroboration of such "nonob-
vious [and predictive] details" provided by the informant,
prior to investigating the defendant and the vehicle, removed
any doubt as to the informant's reliability. *Lyons, supra* at
21. We conclude that the detailed, corroborated tip provided
by the informant in the present case sufficiently established
the informant's reliability.

Our inquiry does not end here, however, since we must
further decide whether the informant's tip supplied the police
with probable cause to search the vehicle and seize the con-
traband located therein. To this end we consider whether the
tip provided the police in this case with sufficient information
"to warrant a person of reasonable caution in believing" that
the vehicle contained heroin. *Commonwealth* v. *Gullick*, 386
Mass. 278, 283 (1982).

As we stated in *Commonwealth* v. *Cast*, 407 Mass. 891,
896 (1990), "an informant's detailed tip, plus independent
police corroboration of those details, of the type that oc-
curred in *Draper* v. *United States*, [358 U.S. 307 (1959)],
can compensate for deficiencies in either or both prongs of
the *Aguilar-Spinelli* standard, and thus satisfy the art. 14
probable cause requirement." In the present case, the in-
formant's corroborated, detailed tip supplied the Lynn police
with probable cause to believe that the subject vehicle con-
tained heroin. *Draper, supra* at 313. See *Cast, supra* at 896.
The informant provided specific details regarding the defend-
ant and his activities, similar in significance to those consid-
ered in *Draper*, which proved to be trustworthy and sufficient
" 'to warrant a man of reasonable caution in the belief that'
an offense has been or is being committed" (footnote omit-
ted). *Draper, supra* at 313, quoting *Carroll* v. *United States*,
267 U.S. 132, 162 (1925). We conclude that the tip provided
the police with the required probable cause.

2. *Exigent circumstances.* In support of his motion to sup-
press, the defendant argued that, even assuming the exis-

tence of probable cause to search the vehicle, the Commonwealth failed to present evidence of exigent circumstances justifying the failure of the police to obtain a warrant prior to searching the vehicle. The Commonwealth responded that the search and seizure were permissible pursuant to the "automobile exception" to the warrant requirement. *Commonwealth v. Ortiz*, 376 Mass. 349, 357 n.7 (1978). The Commonwealth maintained that the exigency required to dispense with the need to obtain a search warrant for an automobile reasonably believed to contain contraband arises automatically out of the fact that an automobile is susceptible of easy access and movement by third parties. *Commonwealth v. A Juvenile (No. 2)*, 411 Mass. 157, 163 (1991), and cases cited ("The inherent mobility of an automobile can supply the exigency required to justify a warrantless search and seizure on probable cause"). See *Commonwealth v. Cavanaugh*, 366 Mass. 277, 282 (1974). The likelihood that the heroin would have been removed or destroyed while a warrant was sought, the Commonwealth contended, was greatly increased in the circumstances and justified an immediate search of the vehicle. *Commonwealth v. Rand*, 363 Mass. 554, 558 (1973). In particular, the Commonwealth asserted that the location of the vehicle (unattended lot abutting a main road), the condition of the vehicle (unlocked hood), the impending darkness (search carried out in February at 4 P.M.), and the time and police power needed to arrest and to transport the defendant and his companion to the station, all contributed to the exigency attending the situation and justified swift action by the police.

The motion judge suppressed the heroin, agreeing with the defendant that the Commonwealth failed to meet its burden of establishing exigent circumstances. The motion judge found that the Lynn police had ample time to seek and obtain a warrant at a nearby District Court, that the police could have guarded the vehicle during this time, that both suspects were in police custody, that no known associates lurked in the area, and that the vehicle was located safely on the defendant's residential premises. In reaching this deci-

sion, the judge relied on *Coolidge* v. *New Hampshire*, 403 U.S. 443, 460 (1971).

The motion judge's determination that *Coolidge* is controlling law in this case was clearly erroneous. *Coolidge* is simply not apposite.

Where the police have probable cause to believe that a vehicle contains contraband, the feasibility of posting a police guard so that a warrant may be obtained before a search is conducted is not a heavily weighted factor militating against the finding of exigent circumstances. *Commonwealth* v. *A Juvenile (No. 2), supra* at 165, and cases cited. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 357-358 (1978) ("While the feasibility of posting guard has mitigated the exigency of the moment where a search of a dwelling was involved . . . the exigency requirement generally has not been as rigorously applied to cars" [footnote omitted]). The guarding and immobilization of the vehicle in the interim is, in effect, a "seizure" and constitutes the precise interference with the defendant's privacy rights that the warrant requirement serves to protect. *Id.* In attempting to strike a balance between a defendant's privacy interests and the interests of the police in situations such as this, we have followed the Supreme Court's initiative and granted police "leeway . . . to conduct immediate searches of automobiles in lieu of holding them pending a warrant," based on the diminished expectation of privacy generally attaching to automobiles. *Commonwealth* v. *A Juvenile (No. 2), supra* at 165, quoting *Commonwealth* v. *Hall*, 366 Mass. 790, 803-804 (1975). For this reason we hold that the judge erred in concluding that the ability of the police to guard the vehicle while a warrant was sought removed the exigency attending the situation.

The opportunity to obtain a search warrant, moreover, will not render an otherwise valid search unconstitutional, unless the opportunity is "plain and ample." *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351 (1983), quoting *United States* v. *Newbourn*, 600 F.2d 452, 457 (4th Cir. 1979). In this case, the entire investigation, surveillance, and arrest took place in little over one hour. Indeed, the opportunity to

obtain a search warrant did not present itself until the police corroborated the tips received from the informant. See *Commonwealth* v. *Cast*, 407 Mass. 891, 904-905 (1990). At that point, approximately 4 P.M., the police faced an open vehicle, believed to contain heroin, in a large parking area and two suspects to arrest. These circumstances hardly depict a "plain and ample" opportunity to obtain a search warrant. Compare *Commonwealth* v. *Forde*, 367 Mass. 798, 801 (1975) (police had sufficient information to establish probable cause to obtain a search warrant one week before the search, but failed to explain why they delayed in doing so). In this case, "[t]he police diligently pursued their investigation and cannot be faulted because they chose to implement their scheme quickly." *Bongarzone, supra* at 351, citing 2 W.R. LaFave, Search and Seizure § 7.2, at 522 (1978).

With respect to the scope of the warrantless search conducted by the police in this case, we observe that the Lynn police had probable cause to believe that the vehicle in this case contained contraband. The informant's tip did not specify the packaging of the contraband or its precise whereabouts in the vehicle. The police therefore had probable cause to search the *entire vehicle* for the presence of narcotics. *Commonwealth* v. *Wunder*, 407 Mass. 909, 913 (1990), quoting *United States* v. *Ross*, 456 U.S. 798, 825 (1982) ("[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle *and its contents* that may conceal the object of the search" [emphasis in original]). *Cast, supra* at 902-903. On this basis, we conclude that Detective Avery was justified in searching under the open hood of the vehicle and removing the air filter to discover any contraband located thereunder.

We do not suggest that, under Massachusetts law, there is no requirement of exigent circumstances to justify an immediate, warrantless search of an automobile based on probable cause. Contrast *United States* v. *Johns*, 469 U.S. 478, 484 (1984). In this case, we conclude that exigent circumstances justifying the search did exist, as already described.

3. *Informer privilege.* At the outset of the argument on the motion to suppress, the prosecutor invoked the government's privilege to withhold the informant's identity in this case and announced that the Commonwealth would not present any direct evidence of the informant's basis of knowledge, since to do so would effectively disclose the informant's identity. *Commonwealth* v. *Amral,* 407 Mass. 511, 516 (1990). The prosecutor stated that the Commonwealth would attempt to establish the informant's basis of knowledge by inference from the corroborated details of the informant's tip. *Commonwealth* v. *Robinson,* 403 Mass. 163, 166 (1988).

On cross-examination, the defendant attempted to elicit testimony from Detective Avery as to exactly what the informant stated about his or her basis of knowledge. The prosecutor objected to the questioning and requested that the defendant be prevented from inquiring into this area on the basis of the informer privilege.

The defendant did not challenge the Commonwealth's right to invoke the privilege or attempt to prove the informant's basis of knowledge by inference. The defendant argued, however, that the Commonwealth could not prevent the defendant from cross-examining the government witnesses as to what the informant told them about his basis of knowledge. Any limitation on his right to cross-examine the witnesses on this point, the defendant asserted, robbed him of his right to rebut the inference that the informant had a legitimate basis of knowledge and violated his right to confront the witness under art. 12 of the Massachusetts Declaration of Rights. The motion judge disagreed with the defendant's argument and precluded him from pursuing this line of questioning on cross-examination. The judge allowed the defendant, however, to explore fully the issue of the informant's credibility and to cross-examine Detective Avery as to the facts the Commonwealth claimed supported an inference of the informant's basis of knowledge. There is no error in the judge's decision.

As the defendant concedes, the government was privileged not to disclose the identity of the informant in this case.

*Roviaro* v. *United States*, 353 U.S. 53, 60 (1957). *Commonwealth* v. *Lugo*, 406 Mass. 565, 570 (1990). In this case, the exercise of the privilege of nondisclosure made the prosecution's case a more difficult one to prove. Had the Commonwealth not been concerned with maintaining the secrecy of the informant's identity, then the prosecutor presumably would have offered Detective Avery's direct testimony as to the informant's basis of knowledge and thereby have avoided the difficulty of having to establish the same by inference. The Commonwealth accepted the consequences of invoking the informer privilege and limited its case accordingly.

The defendant contends that the Commonwealth somehow benefited from invoking the privilege because the prosecutor was allowed to prove by inference a more reliable basis of knowledge than what may truly have existed. The defendant argues that the only effective means by which he could rebut the inference was to explore the actual basis of the informant's knowledge. The defendant's argument is without merit.

"In deciding whether a defendant's constitutional right to cross-examine and thus confront a witness against him has been denied because of an unreasonable limitation of cross-examination, a court must weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination." *Commonwealth* v. *Kirouac*, 405 Mass. 557, 561 (1989). Applying this analysis to this case, we perceive no infringement on the defendant's right to conduct an effective cross-examination. Detective Avery's direct testimony did not include any specific information about what the informant stated to him regarding his basis of knowledge. Rather, Detective Avery testified only as to the substance of the informant's tip, the police corroboration of the details of that tip, the past reliability of the informant, and the circumstances of the surveillance, search and seizure, and arrest of the defendant and his companion. All of the information provided by Detective Avery on direct examination was subject to full attack by the defendant. Indeed, the defendant challenged Detective Avery's testimony as to the exact substance

of the informant's tip as well as Detective Avery's stated reasons for believing that the informant was credible.

The Commonwealth's proof of the informant's basis of knowledge was only as strong as the inferences to be drawn from the facts recited by Detective Avery on direct examination. The defendant was afforded the opportunity to undermine those facts on cross-examination and thereby refute the validity of the inferences they purported to support. That the defendant did not succeed in doing so is not the result of having been foreclosed from probing facts not testified to on direct examination. The limitation on the scope of the cross-examination was in no way an "unreasonable limitation" of the defendant's rights. *Kirouac, supra.* We hold, therefore, that the defendant's right to confront the Commonwealth's witness under art. 12 was not impeded in any material respect.

The order of suppression is vacated and an order denying the defendant's motion to suppress is to enter.

*So ordered.*