Lauriat, J.
The defendant, Alexis Rodriguez (“Rodriguez”), stands indicted on a charge of trafficking in cocaine over fifty grams. Rodriguez has now moved to suppress from evidence at trial two bags of cocaine that were seized from his motor vehicle by the Waltham police after they stopped that vehicle and placed him under arrest on Derby Street in Waltham, Massachusetts on February 16, 1995.
The court conducted an evidentiary hearing on the defendant’s “Motion to Suppress Search and Seizure— Without Warrant” on July 20, 1995, at which it heard testimony from Waltham Police Detective Joseph F. Brooks, Jr. Upon consideration of that testimony, and the memoranda and oral arguments presented by the Commonwealth and Rodriguez, the court makes the following findings of fact, rulings of law, and Order in this case.
FINDINGS OF FACT
1. On or about February 14, 1995, an individual named Zeph Pitt was arrested by the Waltham Police for several motor vehicle violations. Upon his arrest, he asked to speak to Waltham Police Detective Joseph F. Brooks, Jr. (“Brooks”), whom he knew. Pitt advised Brooks that he had information relating to an alleged drug dealer and that he was willing to cooperate with the police in return for being released on bail on the pending motor vehicle charges, and for not being surrendered on an outstanding probation violation until after the birth of his son. Although Brooks made no promises to Pitt, Pitt was released on personal recognizance that day. When Brooks called Pitt’s probation officer several weeks later to inquire about his probation surrender, he was told that the surrender would not be delayed. No evidence was presented at the hearing concerning Pitt’s present status or whereabouts.
2. At his meeting with Brooks on February 14, 1995, Pitt identified “Alexis” as an individual who sold cocaine. Pitt reported that he had bought cocaine from Alexis on numerous occasions in the past. Pitt described Alexis as an Hispanic male of Dominican decent, 20 to 21 years old, 5’7" to 5’9", 160 pounds, with short brown hair, who spoke poor English. Pitt described Alexis’s motor vehicle as a late 1980s four door, red Chevy Nova with a red vinyl steering wheel cover. Pitt said that the vehicle had a secret compartment which Alexis used to hide and sell cocaine. Pitt said the compartment was on the floor in front of the driver's seat, and that to open it, the floor mat had to be removed, the vehicle’s ignition turned on, the ashtray removed from the front dashboard, and a switch behind the ashtray activated. Pitt reported to Brooks that he had seen cocaine in the vehicle and in the secret compartment.
3. On the afternoon of February 16,1995, Pitt called Brooks and advised him that he was to meet with Alexis at 4:00 p.m. at the Burger King Restaurant on Moody Street in Waltham. Brooks and other Waltham police officers met with Pitt at about 3:00 p.m., and he again described Alexis, his vehicle and the planned meeting place. Brooks then searched Pitt for drugs, and found none. Pitt did have a cellular telephone, a beeper, a knife, and about $1,200 in cash. Brooks and the other officers agreed to conduct surveillance of Pitt’s meeting with Alexis, and further agreed that if Pitt removed his baseball cap, it would signal that he had seen cocaine in Alexis’s vehicle.
4. After Brooks dropped Pitt off in the area of the Burger King at about 4:00 p.m., he observed a four-door, red 1987 Chevrolet Nova being driven by an Hispanic male, 5’7" to 5’9", with brown hair, who fit the description given him by Pitt. At the hearing, Brooks identified that individual as Rodriguez. Rodriguez stopped his vehicle at the Burger King, and Pitt got in the front passenger seat. As the police maintained their surveillance, Pitt and Rodriguez had a conversation and then drove around the area. As Rodriguez turned onto Derby Street in Waltham, Pitt removed his baseball cap. At that point, Brooks and the other police officers stopped Rodriguez’s vehicle.
5. Brooks and the other police officers ordered Rodriguez and Pitt out of the vehicle. Through the open driver’s side front door, Brooks observed a clear plastic bag containing white powder in plain view on the floor of the front passenger seat. Connors retrieved the bag and Rodriguez was placed under arrest. Rodriguez was then searched and a beeper and cash, including $850 in cash in one of his pockets was seized. Pitt was also searched, and was found to have only $350 of the $1,200 that he had possessed when he met with Brooks earlier that afternoon. Brooks returned the $850 to Pitt and did not place him under arrest.
6. After Rodriguez was arrested, Brooks entered his vehicle, removed the front floor mat, turned on the ignition, removed the ashtray, found and activated the switch behind the ashtray, and observed a door on the floor open. Behind the door, Brooks observed and seized a clear plastic bag containing several smaller bags of white powder.
RULINGS OF LAW
The initial stop of a person is justified if the officer has “reason to suspect that a person has committed, *122 is committing, or is about to commit a crime.” Commonwealth v. Silva, 366 Mass. 402, 405 (1974). The officer’s suspicion must be based on specific and articulable facts and the specific reasonable inferences which follow from those facts in light of the officer’s experience. Id. at 406. Hearsay information provided by an informant may be used to justify a threshold inquiry. United States v. Hensley, 469 U.S. 221, 23233 (1985). Even an anonymous tip may justify a threshold inquiry if the tip carries enough “indicia of reliability” such as independent corroboration by the police. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 2415 (1990) (threshold inquiry based on anonymous tip and corroboration was justified); Commonwealth v. Anderson, 366 Mass. 394, 399 (1974) (anonymous informant’s written message handed to police officer justified stopping defendant because the indicia of reliability need not meet the two-pronged Aguilar-Spinelli test which establishes probable cause to arrest).
In the present case, Pitt, an individual known to the police, provided detailed information regarding Rodriguez’s vehicle, his age, his ethnicity, and his physical attributes. This information was corroborated by the police during their surveillance of Pitt’s “controlled buy.” Thus, when Pitt signalled that he had seen cocaine in Rodriguez’s car, Brooks and the other police officers had reason to suspect that Rodriguez was committing a crime. Accordingly, the initial stop of Rodriguez’s vehicle was justified.
After stopping Rodriguez’s vehicle, Brooks properly ordered Rodriguez out of the vehicle. “In a justified stop, officers may take reasonable precautions for their own safety, including ‘ordering occupants out of a car for questioning.’ ” Commonwealth v. Moses, 408 Mass. 136, 142 (1990), quoting Commonwealth v. Ferrara, 376 Mass. 502, 505 (1978).
Brooks’s seizure of the cocaine which he observed on the floor in front of the passenger seat was also proper. Although “[a] warrantless search and seizure is presumptively unreasonable unless it falls under a recognized exception to the warrant requirement,” Commonwealth v. A. Juvenile (No. 2), 411 Mass. 157, 162 (1991), Brooks’s seizure of the cocaine falls within the “plain view” exception to the warrant requirement. Brooks had justification for making the initial stop, the evidence was visible from a position in which the officers had a right to be, and the discovery was inadvertent. Commonwealth v. Doulette, 414 Mass. 653, 657 (1993); Commonwealth v. Paniaqua, 413 Mass. 796, 79798 (1992).
Further, this seizure was also justified by the “automobile exception” to the warrant requirement. Under this exception, “the Commonwealth has the burden of proving the existence of both probable cause to believe that the automobile contained contraband and of exigent circumstances to justify proceeding without a warrant.” Commonwealth v. Santiago, 410 Mass. 737, 744 (1991), citing Commonwealth v. Ortiz, 376 Mass. 349, 353 (1978). In the present case, the informant’s tip, along with the independent police corroboration of the tip during the “controlled buy,” provided the police with probable cause to believe that Rodriguez was transporting cocaine in his vehicle.
“To qualify as exigent circumstances, the situation facing the officers at the time they commenced their warrantless search must be such that it was impracticable for them to get a warrant.” Commonwealth v. Cast, 407 Mass. 891, 904 (1990), citing Commonwealth v. Forde, 367 Mass. 798, 800 (1975). “The exigency requirement has generally not been as rigorously applied to motor vehicles as to homes.” Cast, supra at 904, citing Commonwealth v. Ortiz, 376 Mass. 349, 357 (1978). In the present case, the entire investigation, surveillance, and arrest took place within a few hours. The Massachusetts Appeals Court has recently declared that “(p)olice in controlled-buy situations are not required to obtain anticipatory warrants.” Commonwealth v. Lopez, (Appeals Court, No. 94P309, July 14, 1995, slip op. p. 2), citing Commonwealth v. Cast, 407 Mass. 891, 906 (1990). Indeed, in the present case, “the police lacked probable cause to obtain a warrant until the controlled buy was accomplished.” Lopez, supra at 2. Accordingly, the court concludes that exigent circumstances existed which were sufficient to justify a warrantless search of the vehicle.
Brooks’s search of Rodriguez’s person after his arrest and subsequent seizure of $850 and a beeper was also justified. When an officer makes an arrest, the officer may search the arrested person to remove any weapons and to seize any evidence that may be concealed or destroyed. Commonwealth v. Johnson, 413 Mass. 598, 60203 (1992). The scope of the search includes the arrestee’s person and the area within the arrestee’s immediate control. Commonwealth v. Santiago, 410 Mass. 737, 743 (1991).
Brooks’s activation of the secret compartment, and subsequent seizure of the cocaine under the floor mat was also a valid search and seizure. In Commonwealth v. Cast, 407 Mass. 891 (1990), the Supreme Judicial Court held that a lawful warrantless search of a vehicle, pursuant to the automobile exception, would even “extend to the closed suitcase in the trunk.” Id. at 906. “If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.” Id. at 906, quoting United States v. Ross, 456 U.S. 798, 825 (1982). “The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted, [but rather] ... by the object of the search and the places in which there is probable cause to believe it may be found.” Cast, supra at 906, quoting Ross, supra at 824.
*123 In the present case, Pitt informed Brooks of the existence of the compartment under the floor mat and furnished Brooks with detailed instructions regarding its operation. Pitt’s information, in conjunction with the officers’ independent corroboration of that information during the execution of a “controlled buy,” provided the police with probable cause to believe that cocaine would reasonably be expected to be located in the compartment.
Rodriguez contends, however, that any exigency which initially existed ceased after his arrest, thus rendering Brooks’s activation of the compartment under the floor mat illegal. The decisional law in this area is to the contrary. “Where the police have probable cause to believe that a vehicle contains contraband, the feasibility of posting a police guard so that a warrant may be obtained before a search is conducted is not a heavily weighted factor militating against the finding of exigent circumstances.” Commonwealth v. Bakoian, 412 Mass. 295, 304 (1992). Any other interpretation “of art. 14 would force the police in every motor vehicle search that turned up a closed container to impound and secure the vehicle while a warrant was obtained . . .” Commonwealth v. Cast, 407 Mass. 891, 908 (1990). “Such a rule would unnecessarily burden the police and criminal justice system, while providing defendants with insignificant protections against privacy intrusions.” Id. at 908.
In Commonwealth v. Bakoian, 412 Mass. 295 (1992), the police received a tip from a confidential informant, which was independently corroborated by the police, that the defendant was en route from Rhode Island to Lynn with a shipment of heroin. Id. at 296. The police followed the defendant to his apartment, detained the defendant outside of his vehicle, and then searched the entire car, lifting up the hood and removing the air filter. Id. at 305. The Supreme Judicial Court held that “the judge erred in concluding that the ability of the police to guar d the vehicle while a warrant was sought removed the exigency attending the situation.” Id. at 304. The Court concluded that the impending darkness,[1] the openness of the vehicle, and the fact that the police had two suspects to arrest did not depict a “plain and ample” opportunity to obtain a search warrant.[2] Id. at 305. Accordingly, the Court concluded that the search was justified under the “automobile exception” to the warrant requirement.
The court here likewise concludes that Rodriguez’s arrest did not mitigate the exigency of the situation so as to require Brooks to impound the vehicle until he could obtain a search warrant for the secret compartment. Similar to the circumstances depicted in Bako-ian, Brooks and the other officers faced impending darkness, the vehicle was open, and Rodriguez had to be transported to the police station. The opportunity to obtain a search warrant was not “plain and ample.” Bakoian, supra at 305. Thus, under the “automobile exception” to the warrant requirement, Brooks was justified in conducting a search of the entire automobile, including the compartment under the floor mat.
ORDER
For the foregoing reasons, the defendant’s Motion to Suppress Evidence is DENIED.

The search in Bakoian was similarly conducted at 4:00 p.m. on a February evening.

he Court rejected the trial judge’s conclusion that the police had time to obtain a search warrant because both suspects were in custody, the vehicle was in a residential area, and the police could have guarded the vehicle.