NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1627                                        Appeals Court

COMMONWEALTH vs. JERRY L. SANTOS.

No. 17-P-1627.

Plymouth.     March 8, 2018. - January 18, 2019.

Present: Green, C.J., Meade, & Sacks, JJ.


Practice, Criminal, Warrant, Affidavit, Motion to suppress.
    Search and Seizure, Warrant, Affidavit.



    Indictment found and returned in the Superior Court Department on March 9, 2016.

    A pretrial motion to suppress evidence was heard by Angel Kelley Brown, J., and the case was tried before Christopher J. Muse, J.


    Nancy A. Dolberg, Committee for Public Counsel Services, for the defendant.
    Keith Garland, Assistant District Attorney, for the Commonwealth.


    SACKS, J.  On appeal from his conviction of unlawful possession of a firearm, the defendant argues that a judge erred in denying his motion to suppress the firearm, found during the execution of a search warrant.  He argues that the affidavit

submitted in support of the warrant application failed to establish probable cause because it rested upon information supplied by a confidential informant but did not demonstrate that informant's veracity.  We disagree and therefore affirm.

Background.  We summarize the affidavit, filed in December, 2015.  The affiant, State police Trooper Steven Connolly, had sixteen years of experience, including eight years in investigations, and had been involved in numerous firearm-related searches, seizures, and arrests.  He and another trooper had received, within the preceding two days, certain information about a concealed firearm from a confidential informant, "CI#1." They knew CI#1's "true identity" and that CI#1 had handled both loaded and unloaded firearms in the past.  CI#1 requested anonymity out of fear for CI#1's safety.

The affidavit stated that in 2008, CI#1 had provided another trooper and a sergeant with "accurate information regarding the location of an illegally possessed loaded 12 gauge shotgun that was concealed in Brockton."  Those officers went to that location and "seized the specific described loaded 12 gauge shotgun."  The shotgun and ammunition were "submitted for analysis," but "[a]ny[] more specificity regarding the above investigation could compromise the identity and safety of CI#1" because "the target of the current case may[] be familiar with

the target in the above cited case who possessed the loaded shotgun."

The affidavit explained the occasion for the current (December, 2015) warrant application as follows. CI#1 had just told Trooper Connolly and his colleague that, during the preceding forty-eight hours, CI#1 had seen "Jerry," "a black male with dreadlocks," place a silver revolver "in the trunk of a 1996 red Acura Integra, bearing Massachusetts registration 1KJ926," in a parking lot behind a specified address on Main Street in Brockton. CI#1 stated that Jerry currently lived with family members at that address. CI#1 was shown a photograph of the defendant maintained by the registry of motor vehicles (RMV) and identified it as depicting Jerry. CI#1 stated that the Acura was "not in use" and "always remain[ed] parked in the same location."

Troopers surveilling the parking lot behind the Main Street address saw both an Acura and the defendant there. CI#1 was shown a surveillance photograph of the Acura parked in the lot and confirmed that it depicted the vehicle in which Jerry had placed the firearm. A check of RMV records revealed that the Acura was registered to a woman whose last name (like the defendant's) was Santos, but whom the RMV listed as living in Taunton. The RMV records also indicated, in the words of the

affidavit, that the registration of the Acura was "currently revoked for insurance."

The affidavit recited further information linking the defendant to the Acura. Specifically, a few years earlier, a college campus police officer had "queried Massachusetts registration 439RG2" (which differed from the Acura's current registration number) and found that it corresponded to an Acura Integra registered to the defendant. That query came to the attention of the defendant's Federal probation officer, who asked him about it in 2013; the defendant stated that he had purchased a 1996 Acura Integra. Also, a Brockton police report, apparently from 2013,[1] described officers as having responded to a domestic violence incident and arrested the defendant in a "little red car" at the Main Street address.

Trooper Connolly's affidavit expressed his opinion that the defendant owned the Acura but had registered it under a family member's name "to avoid law enforcement detection." Trooper Connolly was aware that the defendant had a lengthy record of drug and other charges, including a 2005 Federal drug conviction for which he received a substantial committed sentence. Trooper

---

[1] The police report was numbered 13-2288-AR. The affidavit also referred to a Brockton police report numbered 11-5432-AR as describing an arrest of the defendant in 2011.

Connolly himself had arrested the defendant in 2011 for possession of a class B substance with intent to distribute.

Further investigation disclosed that the defendant's father lived at the Main Street address and that a 2011 Brockton police report described the defendant as having assaulted his female cousin at that address. Also, neither the defendant, nor anyone else living at the address, nor the registered owner of the Acura (Ms. Santos), possessed a license to carry a firearm or a firearm identification card.

The affidavit described the parking lot behind the address as bordering on a street that was "considered a very high crime area" -- "the scene of murders, shots fired, and narcotics dealing." The area was difficult to surveil because individuals frequently congregated on the street. When Trooper Connolly and fellow officers had attempted to surveil the area as part of the current investigation, persons on the street were "immediately aware of" the officers' presence.

Based on this information, a search warrant for the Acura issued. When officers went to the parking lot to execute the warrant, they saw the defendant standing nearby; in his possession was a car key that fit the Acura. In its trunk, officers found a revolver, along with mail bearing the defendant's name. A jury found the defendant guilty of unlawfully possessing the revolver. This appeal ensued.

Discussion.  We review the four corners of the affidavit to determine whether it established probable cause to support the search warrant.  See Commonwealth v. O'Day, 440 Mass. 296, 297-298 (2003).  When an affidavit is based on a tip from a confidential informant, we examine whether the affidavit met the two-pronged Aguilar-Spinelli[2] test, by establishing both the informant's basis of knowledge and her veracity (i.e., that she was credible or her information reliable).  Commonwealth v. Byfield, 413 Mass. 426, 428-429 (1992), citing Commonwealth v. Upton, 394 Mass. 363, 374-375 (1985).  See Commonwealth v. Alfonso A., 438 Mass. 372, 374 (2003).  The test is not to be applied "hypertechnically," Upton, 394 Mass. at 374, and "independent police corroboration can make up for deficiencies in either or both prongs of the . . . test."  Id. at 376.

Here, the affidavit made clear that the basis of CI#1's knowledge was CI#1's personal observations.  See, e.g., Alfonso A., 438 Mass. at 374-375 (detailed personal observations establish basis of knowledge).  The defendant thus challenges only whether the affidavit sufficiently established CI#1's veracity.  We conclude that it did.

---

    [2] See Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969).

The defendant first argues that police knowledge of CI#1's "true identity" was insufficient to establish that the police could hold CI#1 accountable for providing false information, and thus it did nothing to support CI#1's veracity. We disagree. Knowledge of an informant's identity alone has been held to contribute to his veracity. See Commonwealth v. Cruz, 53 Mass. App. Ct. 24, 30 (2001), citing Commonwealth v. Bakoian, 412 Mass. 295, 301 (1992). Cf. Alfonso A., 438 Mass. at 375-376 (that police knew confidential informant's whereabouts as well as identity, making informant reachable, weighed in favor of his reliability). Moreover, when the affidavit here is "taken as a whole and read in a commonsense fashion," Alfonso A., 438 Mass. at 375, it indicates that the police were able to contact CI#1. The affidavit suggests that CI#1's tip caused the police to focus on the Acura, that they then surveilled the area and obtained a photograph of the Acura in the parking lot, and that CI#1 confirmed that the photograph depicted the vehicle in which the defendant placed the firearm.[3] We read this as indicating that after receiving CI#1's tip, the police obtained the

---

[3] The affidavit stated that troopers had surveilled the area on both December 1 and December 2, 2015. The affidavit was dated December 2 and recited that CI#1 had reported seeing Jerry place the firearm in the Acura within the last forty-eight hours.

photograph, and then were able to locate CI#1 to show it to CI#1.

The defendant next argues that CI#1's 2008 tip regarding the shotgun did not support CI#1's veracity because the affidavit did not indicate that the shotgun was illegally possessed or that its discovery led to an arrest or conviction. Cf. Byfield, 413 Mass. at 431 (informant's veracity established by prior tip leading to arrest and conviction for possession of cocaine with intent to distribute). Again, we disagree. The affidavit stated that the 2008 tip furnished "accurate information regarding the location of an illegally possessed loaded 12 gauge shotgun that was concealed in Brockton" (emphasis added). Police officers went to that location and "seized the specific described loaded 12 gauge shotgun." A commonsense reading of the affidavit is that CI#1 provided information about the concealed location of a shotgun and specifically described it as a loaded 12 gauge model. The statement that it was "illegally possessed" was made by the police and establishes that the shotgun was contraband.[4]

_____

[4] As for the defendant's argument that CI#1's 2008 tip was too far in the past to lend support to CI#1's veracity in 2015, we rejected just such an argument in Commonwealth v. DiPietro, 35 Mass. App. Ct. 638 (1993). There we held that the age of an informant's tips did not defeat their value as indicators of veracity. Id. at 642. "Passage of time . . . does not usually erode one's truth-telling propensities." Id.

Nor does a determination of an informant's veracity necessarily depend on a prior tip having led to an arrest or conviction. As past decisions have recognized, that a confidential informant's prior tip led to the seizure of contraband supports that informant's reliability, even absent information that an arrest or conviction resulted. See Commonwealth v. Mendes, 463 Mass. 353, 365 (2012) ("reliability was established through previous instances where [the informant's] information led to the confiscation of illegal narcotics"); Commonwealth v. Vynorius, 369 Mass. 17, 21 (1975) (reliability established by informant's previously having "furnished police with accurate information [that] resulted in the recovery of a stolen battery"); Commonwealth v. Luce, 34 Mass. App. Ct. 105, 108-110 (1993) (reliability supported by informant's record of having supplied information to police that led to seizure of cocaine); Commonwealth v. Kiley, 11 Mass. App. Ct. 939, 939 (1981) ("The reliability of [an] informant could be inferred from the recital that tips from him had led to the recovery of contraband at an earlier time").

Finally, any deficiency in the showing of CI#1's veracity here was counterbalanced by independent "police corroboration" of a nonobvious detail of the current tip. Alfonso A., 438 Mass. at 377. See Bakoian, 412 Mass. at 301-302 (police corroboration of tip's nonobvious or predictive details helped

show informant's reliability and thus probable cause).  It may be true, as the defendant argues, that anyone in the area could have observed that a 1996 red Acura Integra was sitting, "not in use," in the parking lot behind where the defendant's father lived on Main Street.  The nonobvious detail provided by CI#1, however, was the connection between the Acura and the defendant. Had the Acura been driven regularly by the defendant or a family member, anyone in the area might have observed that activity and connected the defendant to the vehicle.  But it was concededly not in use -- it "always remain[ed] parked in the same location" -- and so the defendant's link to it was not obvious.

As Trooper Connolly's affidavit recounted, further investigation of CI#1's tip revealed that an Acura Integra had once been registered to the defendant (under a different registration number); that the defendant had told his Federal probation officer that he had purchased a 1996 Acura Integra; that Brockton police responding to a prior domestic violence call (apparently two years earlier) had arrested the defendant in a "little red car" at the Main Street address; and that the Acura in the parking lot was registered to a woman with the same last name as the defendant, but who lived in Taunton rather than Brockton.  This information, taken together and read in a commonsense fashion rather than hypertechnically, was sufficient to corroborate CI#1's tip connecting the defendant to the Acura.

Conclusion.  The affidavit sufficiently established the veracity of CI#1, and any shortcoming in that regard was compensated for by corroboration of a nonobvious detail supplied by CI#1.  It follows that the motion to suppress was correctly denied.  The defendant offers no other basis for overturning his conviction.

Judgment affirmed.