NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-740

GLENN HART

vs.

DENNIS W. BUTLER & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Plaintiff Glenn Hart appeals from a Superior Court judgment entered in favor of the defendants, Dennis W. Butler, Lauren Vinitsky, and Stephen Kennedy, on cross motions for judgment on the pleadings.  We affirm.

Background.  The plaintiff is an inmate in the custody of the Massachusetts Department of Correction (department) at the Old Colony Correctional Center (OCCC) in Bridgewater.  In February and March 2019, the department received reports from three confidential informants (CIs) that counterfeit U.S. postage stamps were being made in OCCC's print shop and then

_____

[1] Lauren Vinitsky and Stephen Kennedy.

circulated among the general prison population. After receiving the first CI report, the department opened an investigation. On a computer that was assigned to the plaintiff, department staff found the computer file used to create counterfeit stamps (stamp file). According to the stamp file's metadata, the stamp file was created on January 31, 2019.

On March 1, 2019, Kenneth Newby, the print shop supervisor, filed an incident report stating that the three inmates who had the "access" and "knowledge" to produce counterfeit stamps in the print shop were the plaintiff, Jamie Richards, and another inmate. That same day, department staff interviewed all three inmates. The plaintiff refused to speak during his interview and denied permission for his interview to be recorded.

The department held a disciplinary hearing to determine whether the plaintiff violated departmental regulations by using a computer in OCCC's print shop to produce counterfeit stamps. The plaintiff, represented by counsel, appeared before the hearing officer, defendant Vinitsky. The plaintiff and defendant Butler, the reporting OCCC sergeant, testified. During the latter portion of the hearing, plaintiff's counsel requested that Newby be called as a witness, but that request was denied as untimely.

The plaintiff also requested that Richards appear as a witness to testify "[t]hat [Richards] was the sole person and

acted alone in this." Instead of testifying at the hearing, Richards opted to submit a written affidavit (Richards affidavit). The Richards affidavit stated that "[the plaintiff] played no part in printing of stamps . . . he never copied or helped me copy any items there. I used the computer he was assigned to do all scanning and copying." The Richards affidavit was admitted at the hearing, and Butler testified that it was consistent with Richards's statements during his March 1 interview. The hearing officer considered the Richards affidavit, but ultimately "[did] not find it persuasive in absolving [the plaintiff's] conduct of accessing the file containing the stamps, even if it was to simply do a 'save as' as [the plaintiff's] testimony insinuated."

Documentary evidence was also admitted at the disciplinary hearing, including copies of the print shop's color copier log, video footage from the print shop dated January 31, 2019, a report summarizing information from a CI, and Newby's incident report. The hearing officer found that the January 31 video showed the plaintiff "on the computer in question at the time." The hearing examiner found that the CI's information was reliable and credible in stating that "the stamps are being made in the Print Shop off of [the plaintiff]'s computer," and that

3

"[the plaintiff] is going to have inmate Jamie Richards take the hit for the stamps."[2]

The plaintiff requested that additional documentary evidence be introduced, but the request was denied. Among other things, the plaintiff requested introduction of (1) recordings of the March 1 interviews of Richards and the other inmate, and (2) video footage of the shipping area of the print shop on January 31.[3] The plaintiff expected that the shipping area video would show Richards cutting the stamps or using the scanner, and would show whether the plaintiff was present with Richards.

Because the Richards affidavit was in evidence, a department officer excluded the Richards interview, which the officer found did not contain "anything further exculpatory beyond what Inmate Richards already provided in his written affidavit." The department officer denied the plaintiff's request to introduce the shipping area video because it was "nonexistent." Butler testified that, though there were

---

[2] On motion by the plaintiff, the hearing officer excluded the reports of the information from the other two CIs because they were unsupported by personal knowledge.

[3] The plaintiff also requested introduction of his annual work performance evaluations, the stamp file, and memoranda or notes created by department officers. Because the plaintiff does not raise arguments concerning the denial of his request for these items on appeal, we do not consider them.

multiple cameras in the print shop, no camera captured video footage of the area where the plaintiff requested.

At the conclusion of the disciplinary hearing, the hearing officer found the plaintiff guilty of offense 2-23, "counterfeiting, committing forgery, altering or unauthorized reproduction of any document, article of identification, money, security, or official paper," 103 Code Mass. Regs. § 430.24 (2019).[4]  The plaintiff pursued an administrative appeal from the hearing officer's decision.  Defendant Kennedy, superintendent for OCCC, concurred with the hearing officer and denied the plaintiff's appeal.

In October 2019, the plaintiff sought judicial review of his disciplinary determination by filing a Superior Court complaint against the defendants pursuant to G. L. c. 249, § 4.[5] The parties cross-moved for judgment on the pleadings.  After a hearing, a judge allowed the defendants' motion and denied the plaintiff's motion, concluding "that the hearing officer's decision was based upon substantial evidence and further that

_____

[4] Other charges against the plaintiff were dismissed as duplicative or unsupported by the record.

[5] Because this is a disciplinary appeal, this is an action in the nature of certiorari pursuant to G. L. c. 249, § 4, and not an inmate grievance appeal subject to review under G. L. c. 30A, § 14.  See Fitzpatrick v. Department of Correction, 102 Mass. App. Ct. 617, 619 (2023).

5

the plaintiff's claims for due process violations are without merit." Final judgment of dismissal entered on May 7, 2021. The plaintiff appeals.

Discussion. "We review de novo a judge's order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974)." UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 405 (2019), quoting Champa v. Weston Pub. Sch., 473 Mass. 86, 90 (2015). In reviewing the disciplinary decision of the department pursuant to G. L. c. 249, § 4, we review the administrative record "to correct substantial errors of law on the record that adversely affect material rights." Drayton v. Commissioner of Correction, 52 Mass. App. Ct. 135, 140 (2001). "Our review of a disciplinary proceeding is based on whether the record contains substantial evidence to support the hearing officer's decision." Puleio v. Commissioner of Correction, 52 Mass. App. Ct. 302, 305 (2001)). We defer to the hearing officer's exclusive function of weighing the credibility of witnesses and resolving factual disputes. See Jordan v. Superintendent, Mass. Correctional Inst., Cedar Junction, 53 Mass. App. Ct. 584, 588 (2002).

Due process. During disciplinary proceedings, inmates are entitled to procedural due process protections under the United States and the Massachusetts Constitutions. See Torres v. Commissioner of Correction, 427 Mass. 611, 617-618, cert.

6

denied, 525 U.S. 1017 (1998). The plaintiff argues that the defendants deprived him of procedural due process by denying him the opportunity to present witnesses and evidence.

An inmate may call witnesses or present evidence in his or her defense at a disciplinary hearing. 103 Code Mass. Regs. § 430.14(4) (2019). See Torres, 427 Mass. at 618. Requests for witnesses or evidence may be denied by a department hearing officer, who must "deny with good cause and in writing." 103 Code Mass. Regs. § 430.11(2) (2019). Pursuant to 103 Code Mass. Regs. § 430.14(4), "the hearing officer ha[s] discretion to deny . . . requests for reasons that include[] lack of relevance . . . or cumulativeness." Santiago v. Russo, 77 Mass. App. Ct. 612, 617 (2010).

The Richards affidavit was admitted at the disciplinary hearing in lieu of Richards's live testimony. This satisfied constitutional due process.[6] See Allen v. Department of Correction, 69 Mass. App. Ct. 682, 685 (2007) (upholding disciplinary decision where department accepted witness's affidavit instead of live testimony, where petitioner "found no

---

[6] The defendants assert that this issue is waived. In his administrative appeal and in the Superior Court, the plaintiff did argue that the defendants violated department policy by denying him the opportunity to present witnesses. The plaintiff also argued, in his opposition to the defendant's motion for judgment on the pleadings, that Richards's "several sentence aff[i]davit can only say so much. . . . more evidence should have been allowed to prove [the plaintiff]'s innocence."

7

fault with the contents of his witness's affidavit").  Though we recognize that "live testimony may often be more persuasive than evidence in affidavit form," the plaintiff here "fails to explain why live testimony would have helped his case."  Id. Where the Richards affidavit included the exculpatory information that the plaintiff sought to elicit -- "[the plaintiff] played no part in printing of stamps" -- the plaintiff was not prejudiced by this evidentiary decision.

We also conclude that the hearing officer properly denied as untimely the plaintiff's request to call Newby as a witness. When an inmate is represented at a disciplinary hearing, counsel is "entitled to make one amended written request for witnesses . . . provided that such amended request is communicated to the Disciplinary Officer at least three business days prior to the scheduled time for the hearing."  103 Code Mass. Regs. § 430.12(1) (2019).  Here, plaintiff's counsel did not request the opportunity to call Newby until during the hearing, so the request was untimely.  Moreover, it is not evident what Newby's testimony would have been that would be helpful and relevant.

The hearing officer's decision to exclude the recording of Richards's March 1 interview and shipping area video was also

8

proper.[7]  Given the admission of the Richards affidavit and Butler's testimony that it was consistent with Richards's interview, the recording would have been cumulative.  As for the video of the shipping area, the plaintiff has failed to provide any support for his contention that it does in fact exist.  The plaintiff asserts that even if the shipping area video does not exist, the hearing officer was required to do more to explain its nonexistence, such as describing how the department searched for the footage.  But that misconstrues what is required.  The defendants satisfied due process and department regulations when they provided the following reason:  "None of the cameras in the Print Shop on 1-31-19 are focused on the requested area.  As such, this footage cannot be provided as it is non-existent."  See Ponte v. Real, 471 U.S. 491, 497 (1985) (holding that prison officials may be required "in a limited manner" to give reasons for denying inmate's witness or evidence request).

The plaintiff also raises an issue that he did not raise in his administrative appeal, or in his Superior Court motion for judgment on the pleadings.[8]  He contends that because the report

_____

[7] To the extent that the plaintiff disputes the exclusion of his own March 1 interview, because the plaintiff refused to speak and did not consent to a recording, there was "nothing to document."

[8] In his Superior Court motion for judgment on the pleadings, the plaintiff did discuss the report of the CI's information, but did not argue that it was inadmissible.

9

of the information from the CI quoted the CI as stating, "the word is out," that showed that the CI lacked personal knowledge and therefore the hearing officer erred in considering the CI's information. Setting aside the defendants' contention that the plaintiff waived the issue, we conclude that it lacks merit.

In Nelson v. Commissioner of Correction, 390 Mass. 379, 396 (1983), and Lamoureux v. Superintendent, Mass. Correctional Inst., Walpole, 390 Mass. 409, 414 (1983), the Supreme Judicial Court set forth the standards by which prison disciplinary boards should analyze the reliability of information from informants. We have summarized the holdings of those cases as follows:

> "[W]here a disciplinary board's determination is based on informant information, the record must contain some underlying factual information from which the board can conclude that the informant was credible and his information reliable, must contain the informant's statement in language that is factual and not conclusory, and must establish that the informant spoke with personal knowledge of the matters contained in [the CI's] statement."

Pidge v. Superintendent, Mass. Correctional Inst., Cedar Junction, 32 Mass. App. Ct. 14, 16 n.4 (1992). The information from the CI met that standard. The reliability of the CI's information was bolstered by the fact that Butler had received accurate information from the CI on twelve previous occasions.

10

See Commonwealth v. Santos, 94 Mass. App. Ct. 696, 700 (2019) (informant's credibility established through prior tips). Moreover, the information from the CI was independently corroborated by evidence including the stamp file and the January 31 video depicting the plaintiff at the computer.

We conclude that plaintiff's disciplinary hearing conformed to the applicable departmental regulations, 103 Code Mass. Regs. §§ 430.00 (2019), and thus there was no due process violation. See Torres, 427 Mass. at 618-619.

Sufficiency of the evidence. When an inmate argues there was insufficient evidence to support a guilty finding of a disciplinary board, we review using the substantial evidence test -- "whether evidence exists in the administrative record that a 'reasonable mind might accept as adequate to support a conclusion.'" Allen, 69 Mass. App. Ct. at 684, quoting Cepulonis v. Commissioner of Correction, 15 Mass. App. Ct. 292, 295-296 (1983).

The plaintiff argues that the record lacks substantial evidence because the Richards affidavit exculpated him. We are unpersuaded. First, the hearing officer credited the report of the information from the CI that stated the counterfeit stamps were being made on the plaintiff's computer and that the plaintiff was planning to have Richards "take the hit" for producing the stamps. Second, Newby's incident report

11

identified the plaintiff as a person who possessed the requisite access, skills, and knowledge to counterfeit stamps. Third, the hearing officer credited Butler's testimony and the January 31 video showing the plaintiff using the computer on the day the stamp file was created. Fourth, the hearing officer did not ignore the exculpatory value of the Richards affidavit; she considered it, but she was not required to credit it.

The plaintiff also asserts that the record did not show that he "altered" any stamps, so he could not be found guilty. In addition to "altering" of stamps, offense 2-23 prohibits "counterfeiting," "committing forgery," and "unauthorized reproduction." See 130 Code Mass. Regs. § 430.24. The record thus adequately supports the hearing officer's decision.

Judgment affirmed.

By the Court (Desmond,
Grant & Hodgens, JJ.[9]),

*Paul Little*

Clerk

Entered: April 16, 2025.

---

[9] The panelists are listed in order of seniority.