SUPERIOR COURT 
 
 COMMONWEALTH vs. MICHAEL FIGUEROA

 
 Docket:
 NUMBER 2181CR0044
 
 
 Dates:
 July 26, 2022
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
 
 

             The defendant, Michael Figueroa, is charged by indictment with trafficking cocaine in an amount between thirty-six and one hundred grams, in violation of G. L. c. 94C, § 32E(b). He has moved to suppress the cocaine and other items that police found when they stopped his car on December 20, 2019, in Natick, as well as a statement that he reportedly made to police during the stop. The Commonwealth responds that information provided by a named informant, Isaac Bastian, as well as police corroboration of that information, supplied probable cause to arrest Figueroa. The Commonwealth further contends that Figueroa’s statement was made spontaneously – in response neither to police questioning nor to conduct by police likely to produce a response. Because the evidence establishes both that the police had probable cause to believe that Figueroa was delivering an ounce of cocaine to Bastian’s home when they stopped him and that the statement that Figueroa made to police was not the product of police questioning or its functional equivalent, the Motion to Suppress Evidence & Statements (“Motion,” Paper No. 15)[1] is DENIED.
 
-------------------------------------
 
[1] A Motion to Suppress Evidence Pursuant to Warrantless Stop and Illegal Search (Paper No. 8) was filed on June 17, 2021, by predecessor counsel. In November 2021, Figueroa’s current counsel entered his appearance, and predecessor counsel withdrew. In February 2022, current counsel sent copies of the Motion to Suppress Evidence & Statements (“Motion,” Paper No. 15) that is before me to the session clerk and the Commonwealth. For reasons that are not clear, the Motion was not docketed at that time. It was docketed today as Paper Number 15.
 
                                                            -1-
 
BACKGROUND
            Four law enforcement officials testified at the hearing on the Motion – Trooper Francis Torres of the Massachusetts State Police, Sergeant Detective Scott Brown and Lieutenant Robert Sibilio, of the Framingham Police Department, and Detective Daniel Brogan, of the Natick Police Department. The following facts are drawn from their testimony, which I credit fully.
            All four witnesses were members of the MetroWest Drug Task Force on December 19, 2020, and, on that date, they all participated in executing a search warrant at 87 Evergreen Road in Natick. Isaac Bastian lived at 87 Evergreen Road and was the target of the search warrant. In executing the warrant, police found a white powder believed to be cocaine, plastic sandwich bags, a scale, and $4,010 in cash. Police told Bastian that he would be charged in connection with what they found, but they offered to refrain from placing him under arrest if he agreed to cooperate. After some discussion with police, Bastian agreed to contact his supplier, whom he knew by the nickname “Figz” and order one gram of cocaine. Bastian explained that Figz had supplied him with cocaine in the past. On those occasions, Bastian recounted, he contacted Figz by Snapchat – a social media application – and ordered cocaine, which was then delivered to Bastian’s home.
            Bastian described Figz to police as a tall, heavyset man who drove a dark, possibly Brown, Acura sedan. He did not provide a license plate number. Based on Bastian’s description and Trooper Torres’s familiarity with Michael Figueroa from prior narcotics investigations, police believed that the man Bastian knew as Figz was Figueroa. Torres found a photograph of Figueroa on Facebook and showed it to Bastian, who confirmed that it was a photograph of the man he knew as Figz. Detectives monitored Bastian as he sent a Snapchat message to Figz
 
                                                            -2-
 
asking for “another oz,” which police understood to mean another ounce of cocaine. Ex. 4, at 1. Figz responded, “Yea.” Id. at 2. Bastian then sent Figz a message asking him to “come by . . . soonish.” Id. at 3. Just over two hours later, Figz sent Bastian a message saying, simply, “[y]o.” Id. at 5. Bastian replied by asking, “[w]hat’s up[?]” Id. Figz responded, “[a]lmost there . . . Dude took ring [sic] exit added 29 min . . . smdh.”[2] Id.
            Earlier – after police had identified Figz as Figueroa and Bastian had agreed to order an ounce of cocaine – then-Sergeant Sibilio was sent to Figueroa’s home at 9 Brackett Road in Framingham to try to locate him. Sibilio waited for more than an hour before he saw a man whom he later identified as Figueroa approaching the home driving a four-door Acura sedan. Sibilio watched as Figueroa went into the house. He came out roughly fifteen minutes later, got into the Acura, and drove away. Sibilio followed Figueroa for between fifteen and thirty minutes before he arrived at a home in Bellingham. Figueroa went into the home and stayed inside for roughly fifteen minutes. When he came back out of the house, he got into his car and drove away. Again, Sibilio followed him and continued updating the rest of the team on Figueroa’s movements.
            Sibilio believed, based on his knowledge of the investigation, that Figueroa was headed to Bastian’s home in Natick. He was surprised, therefore, when Figueroa left Route 495 and headed west on the Massachusetts Turnpike (“Turnpike”). The route to Natick from the 495- Turnpike interchange is eastbound on the Turnpike. Thus, Sibilio was not surprised when Figueroa got off the Turnpike in Millbury and reversed direction. It was at this time that Bastian received the Snapchat from Figueroa explaining that he had taken the wrong exit, thereby adding twenty-nine minutes to his trip.
 
-------------------------------------
 
[2] Sergeant Detective Brown testified that, based on his experience with the Internet, “smdh,” is an acronym for “shaking my damn head.”
 
                                                            -3-
 
            Once Brown learned from Sibilio that Figueroa had reversed direction on the Turnpike, he correctly predicted that Figueroa would take the exit for Route 30 in Natick, as it was then the most direct route to Bastian’s home. He therefore arranged for two Natick police officers in marked cruisers to position themselves to stop Figueroa’s Acura on Route 27 in Natick, no more than one-half mile from the beginning of Evergreen Road and slightly more than six miles away from Figueroa’s home in Framingham. Police stopped Figueroa as he drove on Route 27 toward Evergreen Road.
            After stopping the Acura, officers ordered Figueroa out of the car, and Brown explained to him why he had been stopped. Detective Brogan then searched the Acura. Initially he found a bag of marijuana in the center console and two cellular telephones. Then, behind a loosened cover for a heating duct, he found a white powdery substance that was later confirmed to be 84.06 grams of cocaine3 and a scale. When Brogan held up the bag to show his fellow officers what he had found, Figueroa spontaneously said, “that’s for personal use,” or words to that effect that included the phrase, “personal use.”
            Figueroa was arrested and charged with trafficking cocaine. The grand jury returned the indictment in this case on February 5, 2021, and Figueroa was arraigned in this court on March 10, 2021. On July 14, 2022, I held a hearing on the Motion today and took it under advisement.
ANALYSIS
I. The Stop, Arrest, and Search of the Acura
            Warrantless searches generally are prohibited. See Commonwealth v. Perkins, 465 Mass. 600, 603 (2013) (“Under the Fourth Amendment to the United States Constitution, warrantless
 
-------------------------------------
 
[3] I take judicial notice that one ounce is equivalent to 28.35 grams. See https://www.metric- conversions.org/weight/ounces-to-grams.htm. Thus, the 84.06 grams allegedly recovered from Figueroa’s Acura converts to 2.97 ounces of cocaine.
 
                                                            -4-
 
searches are ‘per se unreasonable.’”), quoting Katz v. United States, 389 U.S. 347, 357 (1967). Because the police stop of Figueroa and search of his car were conducted without a warrant, they are “presumptively unreasonable.” Id., citing Katz, 389 U.S. at 357. To avoid suppression of evidence seized in such searches, the Commonwealth has the burden of proving that “the search ‘falls within a narrow class of permissible exceptions’ to the warrant requirement.” Id., quoting Commonwealth v. Antobenedetto, 366 Mass. 51, 57 (1974).
            The motor vehicle exception to the warrant requirement provides that “[w]hen an automobile is stopped on a public way and probable cause exists to search it, the inherent mobility of the motor vehicle provides the exigency necessary to justify a warrantless search.” Commonwealth v. Holness, 93 Mass. App. Ct. 368, 374 (2018), citing Commonwealth v. Motta, 424 Mass. 117, 124 (1997). Similarly, a warrantless arrest must be based on probable cause to believe that the suspect is or has been involved in criminal conduct. Commonwealth v. Wardsworth, 482 Mass. 454, 482 (2019). To establish probable cause, police must have information sufficient “to warrant a prudent person in believing that the individual [arrested] . . . has committed or was committing an offense.” Commonwealth v. Washington, 449 Mass. 476, 481 (2007), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). “Probable cause requires ‘more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.’” Wardsworth, 482 Mass. at 482, quoting Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). In making the probable cause determination, law enforcement officers – and courts – may rely on “reasonable inferences and common knowledge.” Commonwealth v. Welch, 420 Mass. 646, 650 (1995).
 
                                                            -5-
 
            Another exception to the warrant requirement is a search incident to arrest. Under that doctrine, police may search an automobile in connection with an automobile stop and resulting arrest of the driver. See Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 796 (2011) (“Such a warrantless probable cause search of a vehicle is a longstanding and firmly rooted exception to the warrant requirement.”). To be valid, a search incident to arrest must be both based on a valid arrest and at least roughly contemporaneous with it. See Commonwealth v. Washington, 449 Mass. 476, 481 (2007) (search incident to arrest must be conducted “at the time of the search or at a time ‘substantially contemporaneous’ thereto”), quoting New York v. Belton, 453 U.S. 454 (1981). A search incident to arrest can be justified under either of two rationales. See Commonwealth v. Young, 78 Mass. App. Ct. 548, 554 n.7 (2011). The first, often referred to as the Chimel rationale, see Chimel v. California, 395 U.S. 752 (1969), allows for a search of the area to which the arrestee had access at the time of arrest to prevent the arrestee from securing a weapon or destroying evidence. Id. at 553. The second rationale, first expressly adopted by the United States Supreme Court in Arizona v. Gant, 556 U.S. 332, 343, 129 S.CT. 1710, 173 L.Ed.2d 485 (2009), and sometimes referred to as the Thornton rationale, allows a search of the area to which the arrestee had access “when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.” Young, 78 Mass. App. Ct. at 554 n.7, quoting Thornton States, 541 U.S. 615 (2004). See also Starkweather, 79 Mass. App. Ct. at 797.
            When relying on information provided by an informant to establish probable cause to believe  that an individual is committing a crime, police officers must demonstrate the informant’s “basis of knowledge” and “veracity.” Commonwealth v. Upton, 394 Mass. 363, 373 (1985), citing Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). See also Commonwealth v. Wilkerson, 486 Mass. 159, 170 (2020) (affirming
 
                                                            -6-
 
Aguilar/Spinelli test for reliability of informant information). That an informant allowed police to use the informant’s name and address “substantially strengthen[s] . . .” the informant’s reliability. Commonwealth v. Grinkley, 44 Mass. App. Ct. 62, 68 (1997). That an informant gave a name and address is insufficient, however, “standing alone[,] to confirm the informant’s reliability.” Commonwealth v. Alfonso A., 438 Mass. 372, 376-377 (2003). See also Commonwealth v. Mendes, 78 Mass. App. Ct. 474, 482 (2010). “Independent police corroboration[, however,] may make up for deficiencies in one or both prongs of the Aguilar- Spinelli analysis.” Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020), citing Commonwealth v. Depiero, 473 Mass. 450, 454 (2016).
            The testimony of the police officials in this case establishes the basis of Bastian’s knowledge. Bastian told police that Figueroa had sold him drugs in the past, and police corroborated several aspects of his report. Specifically, police confirmed that: (1) Figueroa matched Bastian’s physical description of him; (2) Bastian accurately described Figueroa’s car; (3) Bastian had Figueroa’s information in his Snapchat contacts; (4) Figueroa responded to Bastian’s Snapchat messages with an agreement to sell him drugs; (5) Figueroa sent Bastian a Snapchat message that he had taken a wrong turn at the time that Sibilio saw him reverse direction – back toward Natick – on the Massachusetts Turnpike; and (6) Figueroa was headed in the direction of Bastian’s home when police stopped him. The police investigation thus confirmed Bastian’s basis of knowledge.
            The same investigation supports Bastian’s reliability. Already relaxed because Bastian is a named informant, Grinkley, 44 Mass. App. Ct. at 68, the requirement that police establish his reliability was met by their independent corroboration of his information. This corroboration “bespeak[s] the kind of ‘inside information’ which demonstrates the informant’s ‘special
 
                                                            -7-
 
familiarity with the [defendant’s] affairs’ and supports the conclusion that the information is based on personal knowledge.” Commonwealth v. Bakoian, 412 Mass. 295, 301 (1992) (parentheses in original) (informant’s ability to predict “the exact identities of the persons occupying the vehicle, their exact destination, and the approximate time frame within which they would arrive at the destination location” sufficient to establish reliability), quoting Commonwealth v. Lyons, 409 Mass. 16, 21 n.5 (1990). See Commonwealth v. Meng Joe, 425 Mass. 99, 103 (1997) (informant’s identification of drug dealer, car he would be driving, exact destination, and approximate time of arrival established informant’s reliability).
            Figueroa responds that Bakoian actually supports his case for suppression because in that case, unlike this one, the informant accurately predicted the defendant’s “exact destination.” 412 Mass. at 301. Because police intercepted him as he drove on Route 27 in Natick, Figueroa contends, there is no way to assess whether Bastian accurately predicted Figueroa’s destination. Figueroa is correct that this fact distinguishes this case from Bakoian, but, in light of all of the other information provided by Bastian that the police corroborated, I am unpersuaded that the distinction makes a difference. The issue, as identified in Bakoian and Lyons, is the informant’s ability to provide “nonobvious [and predictive] details” about the defendant’s actions. Bakoian, 412 Mass. at 302, quoting Lyons, 409 Mass. at 21. That Bastian had Figueroa’s contact information in his Snapchat contacts list, that Figueroa exchanged messages with Bastian about a sale of drugs, that Figueroa sent Bastian a message explaining that he had made a wrong turn at a time when police saw him doubling back on the Massachusetts Turnpike, and that Figueroa was stopped as he approached the road on which Bastian lived are all “nonobvious [and predictive] details” about the defendant and his actions. Bakoian, 412 Mass. at 302, quoting Lyons, 409
 
                                                            -8-
 
Mass. at 21. When they stopped his car, therefore, the police had probable cause to believe that he had cocaine on his person and/or in his car that he intended to distribute some of it to Bastian.
            Police officials in this case thus can justify the search of Figueroa’s automobile under either of two exceptions to the warrant requirement: the motor vehicle exception or the exception for searches incident to arrest. There is, therefore, no basis to suppress the results of the search.
2. Figueroa’s Statement to Police After They Recovered the Cocaine from his Automobile
            Figueroa presses for the suppression of his purported statement to police after they found cocaine in his car that it was “for personal use,” or words to that effect. The parties agree that Figueroa allegedly made this statement after he was stopped and ordered out of the car and as Detective Brogan was searching it. The parties further agree that Figueroa had not been advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) when he allegedly made the statement. Figueroa argues that he was in custody at the time that he made the statement attributed to him and that, although it was not in response to questioning, it was induced by police conduct that was the “functional equivalent” of questioning in that it was designed to provoke a response from him. Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The Commonwealth maintains that Figueroa was not in custody at the time he made the purported statement and that, in any event, it was not the result of questioning or its functional equivalent.
            I need not pause long over the question whether Figueroa was in custody at the time that he allegedly made the statement attributed to him. “An interview is custodial where ‘a reasonable person in the suspect’s shoes would experience the environment in which the interrogation took place as coercive.’” Commonwealth v. Cawthron, 479 Mass. 612, 617 (2018), quoting Commonwealth v. Larkin, 429 Mass. 426, 432 (1999). In making this determination, a court looks to “several factors: (1) the place of the interrogation; (2) whether the officers have
 
                                                            -9-
 
conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive, or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest.” Id., quoting Commonwealth v. Groome, 435 Mass. 201, 211 (2001). “Rarely is any single factor conclusive.” Id., citing Commonwealth v. Bryant, 390 Mass. 792, 737 (1984).
            In this case, the second and fourth factors weigh heavily enough in favor of a determination that Figueroa was in custody when he allegedly made the incriminating statement as to compel that finding. At the time that he reportedly made the statement, Figueroa had just been pulled over by uniformed police officers and informed by detectives in plain clothes that he had been stopped on suspicion of selling cocaine. He had been ordered out of the vehicle, and a detective had begun searching it. No reasonable person in Figueroa’s position – informed that he had been stopped on suspicion of dealing cocaine – would have felt free to leave or ask the police officials to do so. See id. I therefore have no difficulty concluding that he was in custody.
            The Commonwealth counters that, even if Figueroa was in custody, there was no interrogation and, therefore, no basis for suppression of his volunteered statement. To the extent that Figueroa has advanced an argument on this point,[4] it is that Detective Brogan’s actions in
 
-------------------------------------
 
[4] Figueroa’s Motion argues broadly for suppression of his statement on a number of grounds. They do not include this particular claim, although he raises the related point that he was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). At the hearing on the Motion, defense counsel did not address the issue of his client’s alleged statement that the cocaine seized by police was for his “personal use.” I address the claim because the facts fairly raise it, and, commendably, the Commonwealth addressed the issue, albeit briefly, in its Memorandum of Law in Opposition to Defendant’s Motion to Suppress Evidence (“Opposition,” Paper No. 13) and at the hearing.
 
                                                            -10-
 
holding up the bag of cocaine for others to see and calling out to alert them to it was the “functional equivalent” of questioning and, therefore, violated Figueroa’s rights under Miranda. “[A]ny words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect . . .” are the “functional equivalent” of questioning. Commonwealth v. Dixon, 79 Mass. App. Ct. 701, 707 (2011) (parentheses in original). “A statement that is volunteered – unprovoked by direct questioning or its functional equivalent – is not the product of interrogation and is not subject to suppression
. . . .” Id., citing, inter alia, Miranda, 384 U.S. at 478.
            The issue in this case turns, then, on whether Brogan’s actions in holding up the bag of suspected cocaine that he had found hidden in the car and calling to his colleagues to draw their attention to it were “reasonably likely to elicit an incriminating response from” Figueroa. Id. Resolution of that question turns “not on the subjective intent of the particular police officer but rather on whether a reasonable person in the suspect’s position would perceive the police statements and conduct as interrogation.” Id., citing Commonwealth v. Torres, 424 Mass. 792, 797 (1997); Commonwealth v. Braley, 449 Mass. 316, 324 (2007). Figueroa has not drawn my attention to any case in which conduct analogous to Brogan’s in this case has been held to be the functional equivalent of questioning. Neither has the Commonwealth cited any authority on point.
            In Commonwealth v. Rubio, 27 Mass. App. Ct. 506, 513-514 (1989), the Appeals Court reversed a conviction on the grounds that the defendant’s admission that cocaine seized during execution of a search warrant was his should have been suppressed. In Rubio, police executing a
 
                                                            -11-
 
search warrant at the defendant’s home found cocaine in several places, including in a “pocketbook.” 27 Mass. App. Ct. at 508. When the defendant came home during the execution of the search warrant police showed him the warrant and cocaine that they had found in a jacket pocket. See id. They then showed him the additional cocaine, apparently still in the pocketbook. See id. After being presented with the cocaine in the pocketbook, the defendant said, “[i]t’s mine. My . . . girlfriend Tammy has nothing to do with it.” Id. (ellipses in original). The Rubio court held that this statement should have been suppressed because it was the result of police conduct that was the functional equivalent of questioning. Under the circumstances, the Rubio Court reasoned, “[s]howing the cocaine in the pocketbook to the defendant in this setting was clearly confrontational and had the force of an implicit question: ‘Is this yours?’” 27 Mass. App. Ct. at 513. In reaching this conclusion, the Rubio Court reasoned that “[t]he police were not in the process of either discovering or securing (taking inventory of) the cocaine when the defendant made his . . . admission.” Id. at 513 (parentheses and ellipses in original).
            In this case, by contrast, the police were very much “in the process of discovering . . . the cocaine,” id., when the defendant allegedly made his statement. Unlike the situation in Rubio, Detective Brogan did not show the cocaine specifically to Figueroa. I credit Brogan’s testimony that he held it up to draw the attention of his colleagues involved in the investigation. Nothing about the situation suggests that “an objective observer (with the same knowledge of the suspect as the police officer) would . . . infer that the [officer’s speech or conduct was] designed to elicit an incriminating response.” Id. at 512 (parentheses, brackets, and ellipses in original), quoting W. S. White, Interrogation Without Questions: Rhode Island v. Innis and United States v. Henry, 78 Mich. L. Rev. 1209, 1231-1232 (1980). There is, therefore, no basis to suppress Figueroa’s purported statement under the rule in Rubio.
 
                                                            -12-
 
CONCLUSION AND ORDER
            For the foregoing reasons, the defendant’s Motion to Suppress Evidence & Statements (“Motion,” Paper No. 15) is DENIED.
 
 
 
                                                            -13-
 
xxz